# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SEAN P. GASKIN                                          )
    3rd Avenue                                        )
    Station Hill                                      )
    St. Michaels, Barbados,                           )

JOHN W. SCANTLEBURY,                                    )
    56 Coconut Palm Avenue                            )
    Durette Garden                                    )
    St. Phillip, Barbados,                            )

      and,                                        )    Civil Action No. _____

FREDERICK C. HAWKESWORTH,                               )
    29 Rock Dundo Heights                             )    COMPLAINT AND DEMAND FOR
    Cave Hill                                         )    JURY TRIAL
    St. Michael, Barbados,                            )

      Plaintiffs,                                 )

        v.                                      )

STEPHEN M. MAY,                                         )
    U.S. Department of Justice                        )
    950 Pennsylvania Avenue, NW                       )
    Washington, DC 20530,                             )

GORDON PATTEN, JR.,                                     )
    Drug Enforcement Administration                   )
    600 Arch Street, Room 10224                       )
    Philadelphia, PA 19106,                           )

JODI L. AVERGUN,                                        )
    c/o Cadwalader, Wickersham & Taft LLP             )
    700 Sixth Street NW                               )
    Washington DC 2000,                               )

KENNETH A. BLANCO,                                      )
    U.S. Department of Justice                        )
    950 Pennsylvania Avenue, NW                       )
    Washington, DC 20530,                             )

PAUL M. O'BRIEN                                         )
    U.S. Department of Justice                        )
    950 Pennsylvania Avenue, NW                       )
    Washington, DC 20530,                             )
                                                      )
                                                      )
                                                      )
_____                       )

ARTHUR WYATT,                                                  )
  U.S. Department of Justice                        )
  950 Pennsylvania Avenue, NW                        )
  Washington, DC 20530,                              )

CHRISTOPHER A. WRAY,                                           )
  c/o King & Spalding LLP                             )
  1700 Pennsylvania Avenue NW, Suite 200              )
  Washington, D.C. 20006,                             )

ALICE S. FISHER                                               )
  c/o Latham & Watkins                                )
  555 Eleventh Street, NW, Suite 1000                 )
  Washington, D.C. 20004-1304,                        )

LANNY A. BREUER                                               )
  c/o Covington & Burling                             )
  One CityCenter                                      )
  850 Tenth Street, NW                                )
  Washington, DC 20001-4956,                          )

JOHN D. ASHCROFT,                                             )
  c/o The Ashcroft Group                              )
  950 N. Glebe Road, Suite 2400                       )
  Arlington, VA 22203,                                )

ALBERTO GONZALES,                                             )
  c/o Belmont University College of Law               )
  1900 Belmont Boulevard                              )
  Nashville, TN 37212-3757,                           )

MICHAEL B. MUKASEY,                                           )
  c/o Debevoise & Plimpton LLP                        )
  919 Third Avenue                                    )
  New York, NY 10022,                                 )

ERIC H. HOLDER, JR.,                                          )
  U.S. Department of Justice                          )
  950 Pennsylvania Avenue, NW                         )
  Washington, DC 20530,                               )

    and,                                    )

JOHN DOES 1 - 20,                                            )

    Defendants.                             )
              )

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

  Plaintiffs Sean P. Gaskin, John W. Scantlebury, and Frederick C. Hawkesworth

(collectively, "Plaintiffs"), by and through counsel, bring the following action for damages

under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), for violations of
constitutional rights, and alleges as follows:

### NATURE OF THE ACTION

1.      This is an action to recover for Plaintiffs' unlawful incarceration in Barbados as
the result of an extradition request and provisional arrest warrant in the sealed case of *United
States v. Hawkesworth*, No. 1:04-0285-EGS (D.D.C.) (hereinafter, "No. 1:04-0285-EGS"), that
certain agents of the U.S. Department of Justice ("DOJ") and Drug Enforcement Agency
("DEA") – and their supervisors – (collectively, "Defendants") negligently and willfully caused.
Although Defendants knew or should have known that the extradition request and supporting
affidavits contained false information when initially prepared in 2004, Defendants' actions and
inaction became malicious in 2007-08 when Defendants and this Court acquired actual
knowledge of the false information. At that time, it became clear that the United States had
arrested and convicted 25 other people – unrelated to Plaintiffs – for the centerpiece of their case
against Plaintiffs (a 184-kilogram cocaine interdiction in New York), leaving the case against
Plaintiffs at a two-kg alleged sale to a U.S. informant in Barbados, allegedly with the intent that
the cocaine illegally be imported into the United States. To avoid this Court's inquiry into the
initial false information, however, Defendants took evasive measures. They dismissed No. 1:04-
0285-EGS and filed similar charges against Plaintiff Hawkesworth and No. 1:04-0285-EGS's
two Guyananian co-defendants – but apparently not against Plaintiffs Gaskin or Scantlebury – in
the Eastern District of New York, *United States v. Douglas,* No. 1:07-cr-0137-RJD (E.D.N.Y.)
(hereinafter, "No. 1:07-cr-0137-RJD"), but they did not correct or update the pending extradition
request in No. 1:04-0285-EGS or its supporting affidavits. In 2007-08, Plaintiffs had been
released on bail from provisional arrest pending extradition, which they were contesting in

Barbadian courts. In 2011, however, Barbados remanded them to custody in prison – with extensive stretches of solitary confinement – only releasing them in 2014 after Plaintiff Gaskin waived extradition, and the United States realized its mistake. This action seeks compensation from the individuals responsible for Plaintiffs' injuries and the violations of their common-law and constitutional rights.

## PARTIES

2.      Plaintiff Sean Gaskin is a 43-year-old resident and citizen of Barbados. Mr. Gaskin's wife is a U.S. citizen.

3.      Plaintiff John W. Scantlebury is a 49-year-old resident of Barbados and a dual U.S.-Barbadian citizen. When living in the United States, Plaintiff Scantlebury used the surname Trotman, which is his father's surname; Scantlebury is his mother's surname, which he uses in Barbados. Mr. Scantlebury's then-minor daughter is a U.S. citizen.

4.      Plaintiff Frederick C. Hawkesworth is a 52-year-old resident of Barbados. Mr. Hawkesworth's then-minor son is a U.S. citizen.

5.      Defendant Stephen M. May is a Senior Trial Attorney in the Narcotic and Dangerous Drug Section within the U.S. Department of Justice's Criminal Division.

6.      Defendant Gordon Patten, Jr. is a Special Agent in the U.S. Drug Enforcement Administration.

7.      Defendants Jodi L. Avergun, Kenneth A. Blanco, Paul M. O'Brien, and Arthur Wyatt (collectively, "Section-Chief Defendants") were the Chief of the Narcotic and Dangerous Drug Section within the U.S. Department of Justice's Criminal Division for the periods relevant to this action.

8.      Defendants Christopher A. Wray, Alice S. Fisher, and Lanny A. Breuer

(collectively, "AAG Defendants") were the Assistant Attorney General ("AAG") for the U.S. Department of Justice's Criminal Division for the periods relevant to this action.

9. Defendants John D. Ashcroft, Alberto Gonzales, Michael B. Mukasey, and Eric H. Holder, Jr. (collectively, "Attorney-General Defendants") served as Attorney General of the United States for the periods relevant to this action.

10. The John Doe defendants are other federal or Barbadian officials or entities whose actions or inaction injured Plaintiffs under U.S. or Barbadian law, including the common law.

## JURISDICTION AND VENUE

11. This action arises out of Defendants' violations of the Fourth, Fifth, and Eighth Amendments of the U.S. Constitution. As such, this action raises federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. §1331.

12. Pursuant to 28 U.S.C. §1391(e), venue is proper in the District of Columbia, the seat of the federal government, as well as the location where a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred.

13. Defendants Avergun, Breuer, Fisher, and Wray maintain their principal place of business in the District of Columbia within the meaning of D.C. Code §13-422, and their actions or inaction took place in the District.

14. Defendants Breuer and Holder are residents of the District of Columbia, and their actions or inaction took place in the District.

15. Defendants Ashcroft, Avergun, Blanco, Ashcroft, and Gonzales have previously resided in the District of Columbia, but Plaintiffs would require discovery to establish that they resided in the District at the time of their challenged actions or inaction, which took place in the District.

16.     Plaintiffs require discovery to establish whether the remaining Defendants reside or maintain a principal of business in the District of Columbia, but their challenged actions and inaction took place in the District. Assuming *arguendo* that Plaintiffs cannot serve any such Defendant within the District and that that Defendant will not waive personal jurisdiction, Plaintiffs intend to file suit against such Defendants in the state of their residence or in Barbados.

17.     An actual and justiciable controversy exists between Plaintiffs and Defendant.

## CONSTITUTIONAL BACKGROUND

18.     The Fourth Amendment protects against unreasonable searches and seizures and the issuance of warrants without probable cause.

19.     The Due Process Clause of the Fifth Amendment prohibits the denial of life, liberty, or property without due process of law.

20.     The Eighth Amendment prohibits inflicting "cruel and unusual punishments," which can include the terms of incarceration such as solitary confinement.

## EXTRADITION TREATY

21.     The extradition treaty between Barbados and the United States defines the terms and procedures for extraditions between the two countries and creates enforceable due-process rights for the citizens and residents of each country.

22.     Under Article 2, Paragraph 1, offenses must be punishable by more than one year in each country to constitute an extraditable offense, except that under Article 2, Paragraph 4, offenses that occur outside the Requesting State's territory are not automatically extraditable unless the laws of the Requested State also criminalize such actions outside the Requested State.

23.     Article 6, Paragraph 1, requires that all extradition requests go through diplomatic channels and be supported *inter alia* by "the procedural history of the case," *id.* art. 6, ¶2(b), and

show probable cause for an arrest under the laws of the Requested State if the offense had been committed in the Requested State, *id.* art. 6, ¶3(c).

24.     Article 9 provides for requests for provisional arrest, but requires that the Requesting State indicate that a formal extradition request will follow. *Id.* art. 9, ¶2(f).

## FACTUAL BACKGROUND

25.     On or about September 20, 2003, U.S. Immigration and Customs Enforcement and DEA interdicted a 184-kilogram shipment of cocaine at John F. Kennedy ("JFK") airport in New York.

26.     On or about November 11, 2003, the federal government arrested 25 people – who were eventually convicted – in connection with the 184-kilogram JFK cocaine shipment.

27.     On or about May 19, 2004, in No. 1:04-0285-EGS filed under seal, the United States charged Plaintiffs and two other men – Raphel Douglas and Terrence Sugrim of Guyana – with distribution of cocaine and conspiracy to distribute cocaine in connection not only with the 184-kilogram JFK shipment but also with an alleged two-kilogram sale in Barbados that allegedly was intended for distribution to the United States.

28.     On June 17, 2004, a federal grand jury for the District of Columbia returned an indictment based on – and superseding – the criminal complaint filed on May 19, 2004.

29.     In support of the indictment, arrest, and extradition of the five defendants in No. 1:04-0285-EGS, Defendant May, Defendant Patten, and a DEA confidential informant made out affidavits that alleged, *inter alia,* that the United States had made no arrests in conjunction with the 184-kilogram JFK shipment and that these five defendants were involved in the 184-kilogram JFK shipment.

30.     Neither Plaintiffs nor Messrs. Douglas and Sugrim were among those arrested for

the 184-kilogram JFK cocaine shipment, and neither Plaintiffs nor Messrs. Douglas and Sugrim were responsible for the 184-kilogram JFK cocaine shipment.

31.     Other than its false affidavits, the United States and Defendants did not have any evidence to connect either Plaintiffs or Messrs. Douglas and Sugrim with the 184-kilogram JFK cocaine shipment.

32.     On the basis of the affidavits referenced in Paragraph 29 and arrest warrants based on those affidavits, United States sought the extradition of Plaintiffs from Barbados.

33.     In Paragraph 18 (at page 10) of his affidavit in support of Plaintiffs' extradition, dated July 19, 2004, Defendant May acknowledges that he knew Plaintiff Scantlebury to be a dual citizen of Barbados and the United States.

34.     On or about May 27-31, 2004, Plaintiffs were arrested pending extradition and imprisoned in Barbados. All three men eventually were released on bail: Mr. Gaskin on February 7, 2005, Mr. Scantlebury on June 26, 2004, and Mr. Hawkesworth in September 2004.

35.     Trinidad and Tobago extradited Mr. Douglas to stand trial in No. 1:04-0285-EGS in the United States, where he was held pending the extradition of his co-defendants.

36.     Mr. Douglas's counsel moved successfully to unseal No. 1:04-0285-EGS as to Mr. Douglas only; No. 1:04-0285-EGS remains sealed as to the other four defendants.

37.     During the pre-trial proceedings in No. 1:04-0285-EGS, Mr. Douglas through counsel identified several false statements in the affidavits that the United States used to support indictment, arrest, and extradition in No. 1:04-0285-EGS.

38.     In light of these discrepancies, on February 13, 2007, the presiding judge in No. 1:04-0285-EGS directed counsel for the United States to produce Mr. May as a witness: "I want to hear from him under oath why he made those misstatements … [a]nd I suggest he bring his

attorney also."

39.     On information and belief, which likely could be proved with a reasonable opportunity for discovery, DOJ and individual lawyers and officials therein offered Mr. Douglas the opportunity to be released in exchange for time served and dismissed No. 1:04-0285-EGS with respect to Mr. Douglas in order to avoid appearing before this Court as ordered.

40.     Because No. 1:04-0285-EGS is sealed as to all defendants except Mr. Douglas, Plaintiffs do not know whether charges still are pending against them in No. 1:04-0285-EGS or in another action – sealed or otherwise – elsewhere.

41.     On or about February 20, 2007, acting through the same DOJ lawyers and officials, the United States filed No. 1:07-cr-0137-RJD against Messrs. Hawkesworth, Douglas, and Sugrim – but not against Messrs. Gaskin and Scantlebury – in the U.S. District Court for the Eastern District of New York.

42.     In No. 1:07-cr-0137-RJD, the United States charged the three defendants there – namely, Messrs. Hawkesworth, Douglas, and Sugrim – with the same distribution and conspiracy to distribute cocaine as was charged in No. 1:04-0285-EGS , as well as two counts against Mr. Douglas only for using a communication facility (*i.e.,* a telephone or cellular phone) in connection with distributing narcotics.

43.     The United States filed No. 1:07-cr-0137-RJD in New York on the same day that the United States formally moved to dismiss No. 1:04-0285-EGS as to Mr. Douglas only. The motion(s), if any, to dismiss No. 1:04-0285-EGS as to the other four defendants are under seal and thus currently unavailable to Plaintiffs.

44.     On or about May 27, 2004, a private Barbadian solicitor first appeared on behalf of the United States in the United States' extradition-related proceedings in Barbados. Those

court proceedings continued through at least December 27, 2012, and other extradition-related, habeas corpus, and bail-related proceedings continued in Barbados at least through November 13, 2013.

45.    At no point in any of these Barbadian legal proceedings did the United States, its Barbadian counsel, or DOJ disclose that No. 1:04-0285-EGS had been dismissed or that No. 1:07-cr-0137-RJD (or any other case) had been commenced.

46.    On December 17, 2007, in No. 1:07-cr-0137-RJD, Defendant May appeared as a witness and was asked about the status of "the extradition of Hawkesworth and his co-defendants," and he testified that the extradition was "still going through legal process in Barbados."

47.    On or about June 9, 2011, Barbados remanded Plaintiffs to prison awaiting extradition.

48.    To the extent that the United States dismissed No. 1:04-0285-EGS as to all five defendants – including Messrs. Gaskin and Scantlebury – and did not open a new sealed case against Messrs. Gaskin and Scantlebury in 2007 when the United States filed No. 1:07-cr-0137-RJD against Messrs. Hawkesworth, Douglas, and Sugrim, there were *no charges* pending against Messrs. Gaskin and Scantlebury when Barbados remanded them to custody in 2011.

49.    Plaintiffs were held under maximum security conditions in solitary confinement, held in a single cell for 23 or more hours per day, with no contact with other prisoners. The cells had no toilet or washing facilities, and Plaintiffs had to use of a bucket – which they could empty whenever they were allowed out – as a toilet. All Plaintiffs lost weight and suffered both mentally and physically.

50.    Plaintiffs were allowed weekly visits, but Plaintiff Gaskin had no family in

Barbados and so saw hardly anyone.

51.     While Plaintiffs were incarcerated, their business suffered or failed without Plaintiff to tend to the ongoing affairs.

52.     On or about November 15, 2013, upon determining that he might be treated better in a federal detention facility managed by the United States and that he could possibly seek the dismissal of the charges wrongly brought against him, Mr. Gaskin formally waived extradition so that he could come to the United States to face those charges. (On or about April 4, 2013, Mr. Gaskin had orally volunteered to waive extradition, but the Barbadian judge advised him to speak with his lawyers and to put the request in writing.)

53.     On January 9, 2014, Barbadian authorities released Plaintiffs, after the United States failed to claim Mr. Gaskin for extradition.

## FALSE EVIDENCE AND THE DUTY TO CORRECT

54.     Under the applicable rules of conduct, Defendants who are attorneys owed a duty of candor to the various tribunals involved – namely, the U.S. Department of State, this Court and the U.S. District Court for the Eastern District of New York, and the Barbadian government – that required them to correct the false extradition request and supporting affidavits. Under *Giglio v. U.S.*, 405 U.S. 150, 153 (1972) (interior quotations omitted), the "deliberate deception of a court ... by the presentation of known false evidence is incompatible with rudimentary demands of justice[, … and] the same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears."

55.     Under 18 U.S.C. §1001(a), in matters such as Defendants' submission of the extradition request to the U.S. Department of State, Defendants could not lawfully: (a) falsify, conceal, or cover up a material fact by any trick, scheme, or device; (b) make materially false,

fictitious, or fraudulent statements or representations; or (c) make or use any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statements or entries. Moreover, the foregoing requirements are subject to a "duty to correct" prior submissions if the person subsequently becomes aware of false information inadvertently submitted to the federal agency.

56.     Under the common law of deceit applicable in both Barbados and the United States, even a statement that was in fact true at the time when made – but, before being acted upon by the party to whom it was made had been rendered untrue by reason of later events – constitutes deceit by a Defendant who was aware of those later events. Moreover, the failure to correct a prior statement (either known to be made false by subsequent events or subsequently learned to have been false when made) constitutes malice and intentional fraud, if and when that party to whom the statement was made subsequently acts on the uncorrected statement.

## SOVEREIGN IMMUNITY

57.     The named Defendants are not sovereign in their individual capacity, and the United States' sovereign immunity does not shield their unconstitutional actions or inaction.

58.     The common law enforceable by this Court against federal actors is the common law of Maryland prior to 1801, and the common law of Maryland at that time was the common law of England, under which executive governmental officers were individually liable for common-law torts such as false imprisonment, false arrest, and malicious prosecution.

59.     Consistent with the foregoing common law of England, the laws and common law of Barbados authorize holding executive governmental officers – i.e., both U.S. officers and Barbadian officers – liable for common-law torts such as false imprisonment, false arrest, and malicious prosecution.

60.     Should Plaintiffs name Barbadian officials or entities as defendants and should those defendants elect to assert it, the Foreign Sovereign Immunity Act, 28 U.S.C. §§1602-1611, would protect such Barbadian defendants in a suit filed in the United States.

## INDIVIDUAL IMMUNITY

61.     Defendant May is not entitled to prosecutorial immunity because he was not the prosecuting attorney in either No. 1:04-0285-EGS in the District of Columbia or No. 1:07-cr-0137-RJD in the Eastern District of New York.

62.     Even if Defendant May had been a prosecuting attorney in No. 1:04-0285-EGS, he would have had to cease being a prosecuting attorney under Rule 3.7 of the applicable Rules of Professional Conduct when he became a material witness.

63.     The rights on which Plaintiffs rely were firmly established at the time that – indeed, centuries before – Defendants culpably acted or failed to act in this matter.

64.     By purposefully availing themselves of the Barbadian forum to seek extradition of Plaintiffs, Defendants are bound not only by U.S. law but also by the laws and common law of Barbados.

## ALTERNATE REMEDIES ARE INAQEQUATE OR UNAVAILABLE

65.     The Federal Tort Claims Act, 28 U.S.C. §§2671-2680 ("FTCA"), does not provide Plaintiffs a remedy because their imprisonment occurred abroad, 28 U.S.C. §2680(k), and the policy and supervision claims fall within FTCA's "discretionary function or duty" exception, *id.* at §2680(a).

66.     The writ of habeas corpus that Plaintiffs sought proved inadequate to redress Plaintiffs' injuries because the Barbadian courts did not accept the pleas of individual citizens accused – falsely in this instance – of crimes versus the claims of Defendants, who hold

themselves out – again, falsely in this instance – as "representative[s] not of an ordinary party to

a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its

obligation to govern at all; and whose interest… is not that it shall win a case, but that justice

shall be done." Contrary to the above-quoted lofty goals that the U.S. Supreme Court set for

Defendants in *Berger v. United States*, 295 U.S. 78, 88 (1935), that are etched onto the façade of

the U.S. Department of Justice, Defendants here placed winning over principle and self-interest

over the public interest and justice.

67. Other than this action for damages, there is no "comprehensive remedial scheme"

for Plaintiffs' injury *under U.S. law*. By contrast, Barbados law may provide an adequate remedy

to recover from these Defendants, provided either that Plaintiffs can assert the Barbados-law

claims as additional claims here or that Plaintiffs can sue Defendants in Barbados and obtain a

judgment there, which could be domesticated here under the Uniform Foreign-Country Money

Judgments Recognition Act of 2011, D.C. Code §§15-361 to -371 ("UFCMJRA").

68. Because the Barbadian legal system follows the English system on which the U.S.

legal system is based, a Barbadian judgment would meet the substantive criteria that UFCMJRA

requires and be enforceable here, provided that the Barbadian court's exercise of jurisdiction

over Defendants complied with the minimum-contacts analysis of Due Process here.

69. As to each Defendant, Plaintiffs allege in the alternative that the actions and

inaction alleged here either (a) constitute sufficient minimum contacts under U.S. constitutional

standards, or (b) do not constitute such minimum contacts.

70. To the extent that the availability of an alternate remedy under Barbadian law or

any other principle of law or equity bars recovery for the *Bivens* claims pleaded against

Defendants, Plaintiffs respectfully pray that the general relief requested in Paragraph 101(E)

include Defendants' liability under the laws of Barbados for the corresponding common-law claims to Plaintiffs' specific pleadings in COUNT I-COUNT IV.

## COUNT I
### DENIAL OF PROCEDURAL DUE PROCESS

71.     Plaintiffs incorporate Paragraphs 1-70 and 76-101 as if fully set forth herein.

72.     Defendants May and Patten and the Section-Chief Defendants had an obligation to correct the extradition request and the materials supporting the extradition request, either or both (a) when they learned that the original extradition request and supporting materials were false *ab initio*, or (b) when the original extradition request and supporting materials became false after their initial submittal due to events circa February 2007: namely, the dismissal of No. 1:04-0285-EGS (which supported the original extradition request), the filing of No. 1:07-cr-0137-RJD (but apparently not against Plaintiffs Gaskin and Scantlebury), and the criminal case becoming at bottom one involving an alleged two-kg sale to a federal informant in Barbados.

73.     Due Process required the federal Defendants to commence new extradition proceedings against the relevant targets when the federal Government dismissed No. 1:04-0285-EGS and filed No. 1:07-cr-0137-RJD. That renewed process would have afforded Mr. Hawkesworth (who remained a target in No. 1:07-cr-0137-RJD) the procedural opportunity to argue that extradition was improper under the extradition treaty, focusing on the specific issues surrounding the alleged two-kg sale in Barbados, as distinct from the 184-kg import into New York. In addition, that renewed process would have afforded Messrs. Gaskin and Scantlebury (who apparently were no longer targets) an opportunity to extricate themselves from the extradition proceedings in 2007 and thereby to avoid their being remanded to prison in 2011.

74.     At all relevant times, these Defendants acted under color of federal law.

75.     As a result of the actions and omissions of the above-named Defendants,

Plaintiffs suffered harm to their persons, liberty, and property, and to rights under the Fifth Amendment to the Constitution.

## COUNT II
### UNLAWFUL SEARCH AND SEIZURE

76.    Plaintiffs incorporate Paragraphs 1-75 and 85-101 as if fully set forth herein.

77.    Defendants May and Patten and the Section-Chief Defendants subjected Plaintiffs to unreasonable searches and seizures pursuant to an extradition request that was supported by false affidavits when originally prepared and filed, which became demonstrably false and known to be false by the events of February 2007 (*i.e.*, the dismissal of No. 1:04-0285-EGS, the filing of No. 1:07-cr-0137-RJD apparently without including Messrs. Gaskin and Scantlebury, and the reduction of the case to an alleged two-kg sale to an informant in Barbados), all in violation of Plaintiffs' rights under the Fourth Amendment.

78.    All federal Defendants lacked probable cause for each Plaintiff's arrest in 2004 and at all times thereafter.

79.    All federal Defendants lacked probable cause for each Plaintiff's remand to custody in 2011 and at all times thereafter.

80.    Defendants May, Patten, and Avergun proximately caused and contributed to the unreasonable search and seizure of Plaintiffs by executing or allowing the execution of an extradition request and supporting affidavits that they knew or should have known were false.

81.    Defendants May, Patten, and Blanco proximately caused and contributed to the unreasonable search and seizure of Plaintiffs by engaging in, approving, or knowing about the "bait and switch" dismissal of No. 1:04-0285-EGS (which allegedly concerned a 184-kg importation into New York) to support extradition and subsequent filing of No. 1:07-cr-0137-RJD (which, at bottom, concerned an alleged two-kg sale to an informant in Barbados) without

correcting and updating the extradition materials, including the apparent dropping of Messrs. Gaskin and Scantlebury as targets.

82.     Defendants May and Patten and all Section-Chief Defendants except Defendant Avergun (who had left office) proximately caused and contributed to the unreasonable search and seizure and the wrongful imprisonment of Plaintiffs by failing to correct and update the extradition materials, including the apparent dropping of Messrs. Gaskin and Scantlebury as targets.

83.     At all relevant times, these Defendants acted under color of federal law.

84.     As a result of the actions and omissions of the above-named Defendants, Plaintiffs suffered harm to their persons, liberty, and property and to rights under the Fourth Amendment to the Constitution.

**COUNT III**
**DELIBERATE INDIFFERENCE**

85.     Plaintiffs incorporate Paragraphs 1-84 and 92-101 as if fully set forth herein.

86.     In his testimony on December 17, 2007, in No. 1:07-cr-0137-RJD, Defendant May was directly aware that "the extradition of Hawkesworth and his co-defendants" was "still going through legal process in Barbados," notwithstanding that he knew that the basis for those extradition proceedings (namely, No. 1:04-0285-EGS) had been dismissed and that his affidavit and other supporting affidavits contained false information.

87.     On information and belief, formed after reasonable inquiry, which likely could be proved with a reasonable opportunity for discovery, Defendants Patten and Blanco also had direct knowledge that the Barbadian extradition proceedings remained underway.

88.     Defendant May's – and, if proved, Defendants Patten's and Blanco's – deliberate indifference to their obligations to correct or update the false extradition request and supporting

materials thereby proximately caused Plaintiffs' subsequent, unnecessary, and unlawful remand to prison under the extradition request.

89.     Under Article 18 of the extradition treaty, DOJ is authorized to "consult with ["the Attorney General of Barbados"] directly in connection with the processing of individual cases," notwithstanding that the treaty requires all extradition requests to flow initially through diplomatic channels. Thus, nothing prevented Defendants' notifying the Barbadian officials directly about the changed circumstances in No. 1:04-0285-EGS.

90.     At all relevant times, these Defendants acted under color of federal law.

91.     As a result of the actions and omissions of the above-named Defendants, Plaintiffs suffered harm to their persons, liberty, and property and to rights under the Fourth, Fifth, and Eighth Amendment to the Constitution.

## COUNT IV
### SUPERVISORY LIABILITY FOR DELIBERATE INDIFFERENCE

92.     Plaintiffs incorporate Paragraphs 1-91 and 101 as if fully set forth herein.

93.     The Criminal Division AAG and the Attorney General share supervisory and regulatory control over extradition proceedings. Specifically, pursuant to 28 C.F.R. §0.55(j), "[i]nternational extradition proceedings" "are assigned to and shall be conducted, handled, or supervised by" the Criminal Division AAG. Pursuant to 28 C.F.R. §0.5(a), however, the Attorney General retains authority to "[s]upervise and direct the administration and operation of the Department of Justice."

94.     The Attorney-General Defendants, the AAG Defendants, and the Section-Chief Defendants all have the supervisory authority to ensure that line attorneys representing the United States comply with all legal and ethical obligations. Each such supervisory Defendant named in this Complaint could have averted Plaintiffs' wrongful imprisonment by proper action

to supervise or regulate the actions of DOJ personnel serving under them.

95.     Under *Giglio v. United States*, 405 U.S. 150, 154 (1972), and numerous related cases, supervisory Defendants have an obligation to promulgate and establish procedures and regulations to address the "burden on the large prosecution offices" of procedural due-process requirements.  *Id.* (recognizing supervisors' duty to promulgate and establish "procedures and regulations … to carry [a procedural] burden and to insure communication of all relevant information on each case to every lawyer who deals with it").

96.     It is obvious and, as such, constructively knowable and known that any entity that issues requests to outside entities must notify the outside entity when the request becomes moot or altered by subsequent events within the requesting entity, particularly where the documents that underlie the outstanding requests are filed under seal (*i.e.,* unavailable).

97.     Based on this actual and constructive knowledge of the risk of an extradition request's leading to the incarceration of not only former suspects against whom charges have been dismissed outright but also continuing suspects against whom the charges have changed materially, the Attorney-General Defendants, AAG Defendants, and Section-Chief Defendants had a duty to ensure that federal agents acting under them were sufficiently trained, supervised, and regulated to prevent the failure to correct and update outstanding warrants and extradition requests in which the underlying circumstances have changed (*e.g.,* if a suspect is no longer wanted or his alleged crimes have changed materially).

98.     The failure of the Attorney-General Defendants, AAG Defendants, and Section-Chief Defendants to train, supervise, and regulate their subordinates proximately caused the violation of Plaintiffs' rights to be free from unreasonable searches and seizures, deprivations of due process, and deliberate indifference under the Fourth, Fifth and Eighth Amendment.

99.     At all relevant times, these Defendants acted under color of federal law.

100.    As a result of the actions and omissions of the Attorney-General Defendants, AAG Defendants, and Section-Chief Defendants, Plaintiffs suffered harm to their persons, liberty, and property, and to their rights under the Fourth, Fifth, and Eighth Amendments.

## PRAYER FOR RELIEF

101.    Wherefore, Plaintiffs Gaskin, Scantlebury, and Hawkesworth respectfully pray for relief and a judgment against Defendants:

A.     Ordering Defendants to pay, jointly and severally, $20,000,000 in compensatory damages to each Mr. Gaskin, Mr. Scantlebury, and Mr. Hawkesworth;

B.     Ordering Defendants to pay, jointly and severally, $5,000,000 in punitive damages to each Mr. Gaskin, Mr. Scantlebury, and Mr. Hawkesworth;

C.     Ordering Defendants to pay, jointly or severally, to each Plaintiff the present value of the lifetime medical damages that each Plaintiff shall prove at trial;

D.     Awarding Plaintiffs' costs, attorneys' fees, and other disbursements for this action; and

E.     Granting Plaintiffs such other and further relief as this Court deems just and proper.

## JURY DEMAND

102.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury as to all issues.

Dated: January 9, 2015                          Respectfully submitted,

                                   _/s/ Lawrence J. Joseph_____

                                   Lawrence J. Joseph, D.C. Bar No. 464777

                                   1250 Connecticut Ave, NW, Suite 200
                                   Washington, DC 20036
                                   Telephone: (202) 355-9452
                                   Telecopier: (202) 318-2254
                                   Email: ljoseph@larryjoseph.com

                                   *Counsel for Plaintiffs*