# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SEAN P. GASKIN                                     )
    3rd Avenue                                  )
    Station Hill                                )
    St. Michaels, Barbados,                     )

JOHN W. SCANTLEBURY,                               )
    56 Coconut Palm Avenue                      )
    Durette Garden                              )
    St. Phillip, Barbados,                      )

      and,                                  )   Civil Action Nos. 1:15-0023-EGS &

FREDERICK C. HAWKESWORTH,                          )   1:15-0033-EGS
    29 Rock Dundo Heights                       )
    Cave Hill                                   )
    St. Michael, Barbados,                      )   COMPLAINT AND DEMAND FOR

      Plaintiffs,                           )   JURY TRIAL AND FOR
                                                   )   INJUNCTIVE AND
      v.                                    )   DECLARATORY RELIEF

STEPHEN M. MAY,                                    )
    U.S. Department of Justice                  )
    950 Pennsylvania Avenue, NW                 )
    Washington, DC 20530,                       )

GORDON PATTEN, JR.,                                )
    Drug Enforcement Administration             )
    600 Arch Street, Room 10224                 )
    Philadelphia, PA 19106,                     )

JODI L. AVERGUN,                                   )
    c/o Cadwalader, Wickersham & Taft LLP       )
    700 Sixth Street NW                         )
    Washington DC 2000,                         )

KENNETH A. BLANCO,                                 )
    U.S. Department of Justice                  )
    950 Pennsylvania Avenue, NW                 )
    Washington, DC 20530,                       )

PAUL M. O'BRIEN                                    )
    U.S. Department of Justice                  )
    950 Pennsylvania Avenue, NW                 )
    Washington, DC 20530,                       )
                                                   )
                                                   )
                                                   )
_____                )

ARTHUR WYATT,                                          )
      U.S. Department of Justice                 )
      950 Pennsylvania Avenue, NW                )
      Washington, DC 20530,                      )

CHRISTOPHER A. WRAY,                                   )
      c/o King & Spalding LLP                    )
      1700 Pennsylvania Avenue NW, Suite 200     )
      Washington, D.C. 20006,                    )

ALICE S. FISHER                                        )
      c/o Latham & Watkins                       )
      555 Eleventh Street, NW, Suite 1000        )
      Washington, D.C. 20004-1304,               )

LANNY A. BREUER                                        )
      c/o Covington & Burling                    )
      One CityCenter                             )
      850 Tenth Street, NW                       )
      Washington, DC 20001-4956,                 )

JOHN D. ASHCROFT,                                      )
      c/o The Ashcroft Group                     )
      950 N. Glebe Road, Suite 2400              )
      Arlington, VA 22203,                       )

ALBERTO GONZALES,                                      )
      c/o Belmont University College of Law      )
      1900 Belmont Boulevard                     )
      Nashville, TN 37212-3757,                  )

MICHAEL B. MUKASEY,                                    )
      c/o Debevoise & Plimpton LLP               )
      919 Third Avenue                           )
      New York, NY 10022,                        )

ERIC H. HOLDER, JR.,                                   )
      U.S. Department of Justice                 )
      950 Pennsylvania Avenue, NW                )
      Washington, DC 20530,                      )

UNITED STATES OF AMERICA,                              )
                                                       )
          and,                          )

JOHN DOES 1 - 20,                                      )
                                                       )
          Defendants.                   )

## SECOND SUPPLEMENTED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Sean P. Gaskin, John W. Scantlebury, and Frederick C. Hawkesworth

(collectively, "Plaintiffs"), by and through counsel, bring the following action for damages from violations of constitutional and common-law rights and for related declaratory and injunctive relief, based on the following allegations:

## NATURE OF THE ACTION

1.      This is an action to recover for Plaintiffs' unlawful incarceration in Barbados as the result of an extradition request and provisional arrest warrants in the sealed case of *United States v. Hawkesworth*, No. 1:04-0285-EGS (D.D.C.) (hereinafter, "No. 1:04-0285-EGS"), that certain agents of the U.S. Department of Justice ("DOJ") and Drug Enforcement Agency ("DEA") – and their supervisors – (collectively, "Defendants") negligently and willfully caused. Although Defendants knew or should have known that the extradition request and supporting affidavits contained false information when initially prepared in 2004, Defendants' actions and inaction became malicious in 2007-08 when Defendants acquired actual knowledge of the false information. At that time, it became clear that the United States had arrested and convicted 25 other people – unrelated to Plaintiffs – for the centerpiece of their case against Plaintiffs (a 184-kilogram cocaine interdiction in New York), leaving the case against Plaintiffs at a two-kg alleged sale to a U.S. informant in Barbados, allegedly with the intent that the cocaine illegally be imported into the United States. To avoid this Court's inquiry into the initial false information, Defendants took evasive measures. They dismissed No. 1:04-0285-EGS and filed similar charges against Plaintiff Hawkesworth and No. 1:04-0285-EGS's two co-defendants from Guyana – but apparently not against Plaintiffs Gaskin or Scantlebury – in the Eastern District of New York, *United States v. Douglas,* No. 1:07-cr-0137-RJD (E.D.N.Y.) (hereinafter, "No. 1:07-cr-0137-RJD"), and they did not correct or update the pending extradition request in No. 1:04-0285-EGS or its supporting affidavits. In 2007-08, Plaintiffs had been released on bail from provisional arrest

pending extradition, which they were contesting in Barbadian courts. In 2011, Barbados remanded them to custody in prison – with extensive stretches of solitary confinement – only releasing them in 2014 after Plaintiff Gaskin waived extradition, and the United States dismissed the action to avoid getting caught at failing to correct known false statements. This action seeks compensation from the individuals responsible for Plaintiffs' injuries and the violations of their common-law and constitutional rights.

## PARTIES

2.      When these actions were filed, Plaintiff Sean Gaskin was a 43-year-old resident and citizen of Barbados.

3.      When these actions were filed, Plaintiff John W. Scantlebury was a 49-year-old resident of Barbados and a dual U.S.-Barbadian citizen. When living in the United States, Plaintiff Scantlebury used the surname Trotman, which is his father's surname; Scantlebury is his mother's surname, which he uses in Barbados.

4.      When these actions were filed, Plaintiff Frederick C. Hawkesworth was a 52-year-old resident of Barbados. Mr. Hawkesworth died on or about September 30, 2016 and is survived by his wife as the representative of his estate.

5.      Defendant Stephen M. May is a Senior Trial Attorney in the Narcotic and Dangerous Drug Section within the U.S. Department of Justice's Criminal Division.

6.      Defendant Gordon Patten, Jr. is a Special Agent in the U.S. Drug Enforcement Administration.

7.      Defendants Jodi L. Avergun, Kenneth A. Blanco, Paul M. O'Brien, and Arthur Wyatt (collectively, "Section-Chief Defendants") were the Chief of the Narcotic and Dangerous Drug Section within the U.S. Department of Justice's Criminal Division for the periods relevant

to this action.

8.       Defendants Christopher A. Wray, Alice S. Fisher, and Lanny A. Breuer (collectively, "AAG Defendants") were the Assistant Attorney General ("AAG") for the U.S. Department of Justice's Criminal Division for the periods relevant to this action.

9.       Defendants John D. Ashcroft, Alberto Gonzales, Michael B. Mukasey, and Eric H. Holder, Jr. (collectively, "Attorney-General Defendants") served as Attorney General of the United States for the periods relevant to this action.

10.      The John Doe defendants are other federal officials or entities whose actions or inaction injured Plaintiffs under U.S. or Barbadian law, including the common law.

11.      Defendant United States is the federal sovereign and the prosecuting party in No. 1:04-cr-0285-EGS.

## JURISDICTION AND VENUE

12.      This action arises out of Defendants' violations of the Fourth, Fifth, and Eighth Amendments of the U.S. Constitution and thus raises federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. §1331. In addition, all plaintiffs were at the time of the case's filing residents and citizens of Barbados, and all defendants were residents and citizens of the United States, which givens this Court diversity jurisdiction under 28 U.S.C. §1332(a). Further, this action arises out of Defendant's violations of the laws of the District of Columbia, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Moreover, the All Writs Act, 28 U.S.C. §1651, gives this Court equitable jurisdiction in the nature of the writ of *coram nobis* to review the criminal proceedings in No. 1:04-0285-EGS. Finally, this Court has jurisdiction pursuant to this Court's equity jurisdiction under the line of cases from *Kendall v. U.S. ex rel. Stokes*, 37 U.S. (12 Pet.) 524, 580-81 (1838), to *Ganem v. Heckler*, 746 F.2d 844, 851 (D.C.

Cir. 1984)., over this Court's enabling legislation and its historic, common-law powers.

13.     Pursuant to 28 U.S.C. §1391(e), venue is proper in the District of Columbia, the seat of the federal government, as well as the location where a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred.

14.     Defendants Avergun, Breuer, Fisher, and Wray maintain their principal place of business in the District of Columbia within the meaning of D.C. Code §13-422, and their actions or inaction took place in the District.

15.     Defendants Breuer and Holder are residents of the District of Columbia, and their actions or inaction took place in the District.

16.     Defendants Ashcroft, Avergun, Blanco, Ashcroft, and Gonzales have previously resided in the District of Columbia, but Plaintiffs would require discovery to establish that they resided in the District at the time of their challenged actions or inaction, which took place in the District.

17.     Plaintiffs require discovery to establish whether the remaining Defendants reside or maintain a principal of business in the District of Columbia, but their challenged actions and inaction took place in the District.

18.     An actual and justiciable controversy exists between Plaintiffs and Defendant.

## CONSTITUTIONAL BACKGROUND

19.     The Fourth Amendment protects against unreasonable searches and seizures and the issuance of warrants without probable cause.

20.     The Due Process Clause of the Fifth Amendment prohibits the denial of life, liberty, or property without due process of law and requires a criminal defendant to have minimum contacts with the prosecuting forum before a prosecution can proceed.

21.     The Eighth Amendment prohibits inflicting "cruel and unusual punishments," which can include the terms of incarceration such as solitary confinement.

## COMMON LAW

22.     Perhaps because they derive from a common source, the torts of malicious prosecution and false imprisonment are similar under District of Columbia and Barbadian – which is the say British – law.

23.     Malicious prosecution means (a) a proceeding terminated in the plaintiff's favor;, (b) with malice or bad faith on the defendants' part; (c) a lack of probable cause for the underlying suit; and (d) special injury occasioned by plaintiff as a result of the original action. Where the underlying suit leads to a loss of liberty such as incarceration, the fourth criterion is met. Moreover, malice and bad faith can be inferred from the failure to correct information that one had the duty to correct. Similarly, admitting that someone else did the crime and continuing to charge another person for the same crime evidences not only malice but the absence of probable cause.

24.     False imprisonment means (a) detaining someone against their will within an area fixed by the defendant, and (b) the unlawfulness of the detention, where the issue of \probable cause goes to the lawfulness of the detention.

25.     In a diversity action, the substantive law of Barbados would apply because the injury and conduct occurred in Barbados to residents of Barbados, using Barbadian courts and prisons by proxy, with no center of relationship between the parties other than the Barbadian location in which the Defendants conducted their torts.

26.     Although the substantive law of Barbados applies, the procedural laws of the District of Columbia apply to a federal court sitting in diversity, and the District's survivorship law, D.C. CODE § 12-101, provides that "the right of action, for all such cases, survives in favor of

or against the legal representative of the deceased," which is Mr. Hawkesworth's surviving wife.

## EXTRADITION TREATY

27.     The extradition treaty between Barbados and the United States defines the terms and procedures for extraditions between the two countries and creates enforceable due-process rights for the citizens and residents of each country.

28.     Under Article 2, Paragraph 1, offenses must be punishable by more than one year in each country to constitute an extraditable offense, except that under Article 2, Paragraph 4, offenses that occur outside the Requesting State's territory are not automatically extraditable unless the laws of the Requested State also criminalize such actions outside the Requested State.

29.     Article 6, Paragraph 1, requires that all extradition requests go through diplomatic channels and be supported *inter alia* by "the procedural history of the case," *id.* art. 6, ¶2(b), and show probable cause for an arrest under the laws of the Requested State if the offense had been committed in the Requested State, *id.* art. 6, ¶3(c).

30.     Article 9 provides for requests for provisional arrest, but requires that the Requesting State indicate that a formal extradition request will follow. *Id.* art. 9, ¶2(f).

31.     Under Article 18 of the extradition treaty, DOJ is authorized to "consult with ["the Attorney General of Barbados"] directly in connection with the processing of individual cases," notwithstanding that the treaty requires all extradition requests to flow initially through diplomatic channels.

## IRREPARABLE HARM AND INADEQUATE ALTERNATE REMEDIES

32.     A plaintiff's irreparable injury and lack of an adequate legal remedy justify injunctive relief. In addition to the declaratory relief requested in Paragraph 121, because Plaintiffs' ongoing exposure to irreparable injury from unlawful federal actions and inaction

entitles Plaintiffs to injunctive relief.

33.     Defendants' actions and inaction have irreparably injured and continue to irreparably injure Plaintiffs' reputation and, as a result, their ability to find employment and to secure financing from banks.

34.     Defendants' actions and inaction have irreparably injured and continue to irreparably injure Plaintiffs' rights to travel and to associate freely with relatives in the United States.

35.     Plaintiffs lack an alternative remedy to the injunctive and declaratory relief requested in Paragraph 121.

36.     Because this Court has jurisdiction as a threshold matter, the Declaratory Judgment Act, 28 U.S.C. §§2201-2202, provides this Court the power to "declare the rights and other legal relations of any interested party…, whether or not further relief is or could be sought." 28 U.S.C. §2201; *accord* FED. R. CIV. P. 57 advisory committee note ("the fact that another remedy would be equally effective affords no ground for declining declaratory relief").

37.     Because the Government's and this Court's actions in the underlying criminal action are not reviewable on appeal, not only this Court but also the federal appellate courts have jurisdiction to review those actions under the All Writs Act, including relief in the nature of the writ of *coram nobis*.

38.     Because the Government's actions and inaction in and related to the underlying criminal action and the extradition proceeding include final agency action for which Plaintiffs lack an adequate alternate remedy, the Administrative Procedure Act gives this Court jurisdiction and a cause of action to review that action and inactions.

## FACTUAL BACKGROUND

39.     On or about September 20, 2003, U.S. Immigration and Customs Enforcement and DEA interdicted a 184-kilogram shipment of cocaine at John F. Kennedy ("JFK") airport in New York.

40.     On or about November 11, 2003, the federal government arrested 25 people – who were eventually convicted – in connection with the 184-kilogram JFK cocaine shipment.

41.     On or about May 19, 2004 (*i.e.*, between the JFK interdiction and the arrest of the people responsible for the JFK shipment), in No. 1:04-0285-EGS filed under seal, the United States charged Plaintiffs and two other men – Raphel Douglas and Terrence Sugrim of Guyana – with distribution of cocaine and conspiracy to distribute cocaine in connection not only with the 184-kilogram JFK shipment but also with an alleged two-kilogram sale in Barbados that allegedly was intended for distribution to the United States.

42.     On June 17, 2004, a federal grand jury for the District of Columbia returned an indictment based on – and superseding – the criminal complaint filed on May 19, 2004.

43.     In support of the indictment, arrest, and extradition of the five defendants in No. 1:04-0285-EGS, Defendant May, Defendant Patten, and a DEA confidential informant made out affidavits that alleged, *inter alia,* that the United States had made no arrests in conjunction with the 184-kilogram JFK shipment and that these five defendants were involved in the 184-kilogram JFK shipment.

44.     Neither Plaintiffs nor Messrs. Douglas and Sugrim were among those arrested for the 184-kilogram JFK cocaine shipment, and neither Plaintiffs nor Messrs. Douglas and Sugrim were responsible for the 184-kilogram JFK cocaine shipment.

45.     On the basis of the affidavits referenced in Paragraph 43 and arrest warrants based

10

on those affidavits, United States sought the extradition of Plaintiffs from Barbados.

46.    On or about May 27-31, 2004, Plaintiffs were arrested pending extradition and imprisoned in Barbados. All three men eventually were released on bail: Mr. Gaskin on February 7, 2005, Mr. Scantlebury on June 26, 2004, and Mr. Hawkesworth in September 2004.

47.    Trinidad and Tobago extradited Mr. Douglas to stand trial in No. 1:04-0285-EGS in the United States, where he was held pending the extradition of his co-defendants.

48.    Mr. Douglas's counsel moved successfully to unseal No. 1:04-0285-EGS as to Mr. Douglas only; No. 1:04-0285-EGS remained sealed as to the other four defendants until after these actions were filed.

49.    During the pre-trial proceedings in No. 1:04-0285-EGS, Mr. Douglas through counsel identified several false statements in the affidavits that the United States used to support indictment, arrest, and extradition in No. 1:04-0285-EGS.

50.    In light of these discrepancies, on February 13, 2007, the presiding judge in No. 1:04-0285-EGS directed counsel for the United States to produce Mr. May as a witness: "I want to hear from him under oath why he made those misstatements … [a]nd I suggest he bring his attorney also."

51.    Because No. 1:04-0285-EGS was sealed as to all defendants except Mr. Douglas, Plaintiffs did not know – when they filed these actions – whether charges still are pending against them in No. 1:04-0285-EGS or in another action – sealed or otherwise – elsewhere.

52.    On or about February 20, 2007, acting through the same DOJ lawyers and officials, the United States filed No. 1:07-cr-0137-RJD against Messrs. Hawkesworth, Douglas, and Sugrim – but not against Messrs. Gaskin and Scantlebury – in the U.S. District Court for the Eastern District of New York.

53.     In No. 1:07-cr-0137-RJD, the United States charged the three defendants there –

namely, Messrs. Hawkesworth, Douglas, and Sugrim – with the same distribution and conspiracy

to distribute cocaine as was charged in No. 1:04-0285-EGS , as well as two counts against Mr.

Douglas only for using a communication facility (*i.e.,* a telephone or cellular phone) in connection

with distributing narcotics.

54.     The United States filed No. 1:07-cr-0137-RJD in New York on the same day that

the United States formally moved to dismiss No. 1:04-0285-EGS as to Mr. Douglas only. The

motion(s), if any, to dismiss No. 1:04-0285-EGS as to the other four defendants are under seal and

unavailable to Plaintiffs until after these actions were filed.

55.     On or about May 27, 2004, a private Barbadian solicitor first appeared on behalf of

the United States in the United States' extradition-related proceedings in Barbados. Those court

proceedings continued through at least December 27, 2012, and other extradition-related, habeas

corpus, and bail-related proceedings continued in Barbados at least through November 13, 2013.

56.     At no point in any of these Barbadian legal proceedings did the United States, its

Barbadian counsel, or DOJ disclose that No. 1:04-0285-EGS had been dismissed or that No. 1:07-

cr-0137-RJD (or any other case) had been commenced.

57.     On December 17, 2007, in No. 1:07-cr-0137-RJD, Defendant May appeared as a

witness and was asked about the status of "the extradition of Hawkesworth and his co-defendants,"

and he testified that the extradition was "still going through legal process in Barbados."

58.     In the Douglas proceedings in New York, the Government admitted that it had fully

resolved the 184-kilogram JFK interdiction: "I did find out that they made a … mass arrest. It was

an ongoing investigation, building the case. And eventually they arrested everyone that was

involved in that." Hearing Tr., at 125, *U.S. v. Douglas*, No. 1:07-cr-0137-RJD (E.D.N.Y.) (Dec.

17, 2007).

59.     Similarly, in the Douglas proceedings in New York, the Government admitted "The case boils down to the testimony of an informant, who can be skillfully impeached by the defense. At bottom, the case involves only two kilograms of cocaine. And though there were some hazy conversations between the [informant] and Hawkesworth about other deals, in the final analysis the case is about two kilograms of cocaine." Gov't's Br.in Regards to Plea and Sentencing, at 5, *U.S. v. Douglas*, No. 1:07-cr-0137-RJD (E.D.N.Y.) (Apr. 1, 2008).

60.     On or about June 9, 2011, Barbados remanded Plaintiffs to prison awaiting extradition.

61.     Plaintiffs were held under maximum security conditions in solitary confinement, held in a single cell for 23 or more hours per day, with no contact with other prisoners. The cells had no toilet or washing facilities, and Plaintiffs had to use of a bucket – which they could empty whenever they were allowed out – as a toilet. All Plaintiffs lost weight and suffered both mentally and physically.

62.     Plaintiffs were allowed weekly visits, but Plaintiff Gaskin had no family in Barbados and so saw hardly anyone.

63.     While Plaintiffs were incarcerated, their respective businesses suffered or failed without each Plaintiff to tend to his business's ongoing affairs.

64.     On or about November 15, 2013, upon deciding that he might be treated better in a federal detention facility managed by the United States and that he could possibly seek the dismissal of the charges wrongly brought against him, Mr. Gaskin formally waived extradition so that he could come to the United States to face those charges. (On or about April 4, 2013, Mr. Gaskin had orally volunteered to waive extradition, but the Barbadian judge advised him to speak

with his lawyers and to put the request in writing.)

65.     By filing a matter-of-fact motion to dismiss without disclosing key facts (*e.g.*, the defendants were incarcerated, that one had waived extradition to stand trial) after having admitted that wholly other people did the major crime alleged at JFK, leaving *no crimes* alleged against three defendants, including the one that waived extradition, the Government's dismissal qualifies as sufficiently favorable to Plaintiffs – as opposed to merely technical – to support a finding of no probable cause under both District of Columbia and Barbadian law.

66.     On January 9, 2014, Barbadian authorities released Plaintiffs, after the United States failed to claim Mr. Gaskin for extradition. By order dated January 9, 2014, this Court dismissed the indictment without prejudice, and on January 13, 2014, this Court quashed the arrest warrants as to all remaining defendants. (Messrs. Hawkesworth and Sugrim remained under indictment in No. 1:07-cr-0137-RJD until that case was dismissed on or about May 12, 2015.)

## FALSE EVIDENCE AND THE DUTY TO CORRECT

67.     Under the applicable rules of conduct, the Defendants who are attorneys owed a duty of candor to the various tribunals involved – namely, the U.S. Department of State, this Court and the U.S. District Court for the Eastern District of New York, and the Barbadian government – that required them to correct the false extradition request and supporting affidavits. Under *Giglio v. U.S.*, 405 U.S. 150, 153 (1972) (interior quotations omitted), the "deliberate deception of a court ... by the presentation of known false evidence is incompatible with rudimentary demands of justice[, … and] the same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears."

68.     Under 18 U.S.C. §1001(a), in matters such as Defendants' submission of the extradition request to the U.S. Department of State, Defendants could not lawfully: (a) falsify,

conceal, or cover up a material fact by any trick, scheme, or device; (b) make materially false, fictitious, or fraudulent statements or representations; or (c) make or use any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statements or entries. Moreover, the foregoing requirements are subject to a "duty to correct" prior submissions if the person subsequently becomes aware of false information inadvertently submitted to the federal agency.

69.     Under the common law of deceit applicable in both Barbados and the United States, even a statement that was in fact true at the time when made – but, before being acted upon by the party to whom it was made had been rendered untrue by reason of later events – constitutes deceit by a Defendant who was aware of those later events. Moreover, the failure to correct a prior statement (either known to be made false by subsequent events or subsequently learned to have been false when made) constitutes malice and intentional fraud, if and when that party to whom the statement was made subsequently acts on the uncorrected statement.

## SOVEREIGN IMMUNITY

70.     Pursuant to 5 U.S.C. §702, Defendant United States has waived its sovereign immunity for actions against itself, its instrumentalities, and its officers for non-monetary injunctive and declaratory relief and for the entry of judgments and decrees against the United States in such actions.

71.     The United States has waived sovereign immunity for this action and for the declaratory and injunctive relief sought in Paragraph 121.

72.     The named Defendants are not sovereign in their individual capacity, and the United States' sovereign immunity does not shield their unconstitutional actions or inaction in the United States. Moreover, they hold no immunity from suit for their illegal or tortious actions and

inaction in Barbados.

73.     The common law enforceable by this Court against federal actors is the common law of Maryland prior to 1801, and the common law of Maryland at that time was the common law of England, under which executive governmental officers were individually liable for common-law torts such as false imprisonment, false arrest, and malicious prosecution. *Mostyn v. Fabrigas*, 98 Eng. Rep. 1021 (K.B. 1774). The Congress that created this Court intended these common law rights to be enforceable by this Court and no subsequent act of Congress has repealed that original grant of jurisdiction.

74.     Consistent with the foregoing common law of England, the laws and common law of Barbados authorize holding executive governmental officers – i.e., both U.S. officers and Barbadian officers – liable for common-law torts such as false imprisonment, false arrest, and malicious prosecution.

## **INDIVIDUAL IMMUNITY**

75.     Defendant May is not entitled to prosecutorial immunity because he was not the prosecuting attorney in either No. 1:04-0285-EGS in the District of Columbia or No. 1:07-cr-0137-RJD in the Eastern District of New York.  Extradition proceedings are civil proceedings and thus so not impart prosecutorial immunity on the participants.

76.     Even if Defendant May had been a prosecuting attorney in No. 1:04-0285-EGS, he would have had to cease being a prosecuting attorney under Rule 3.7 of the applicable Rules of Professional Conduct when he became a material witness.

77.     The rights on which Plaintiffs rely were firmly established at the time that – indeed, centuries before – Defendants culpably acted or failed to act in this matter.

78.     By purposefully availing themselves of the Barbadian forum to seek extradition of

Plaintiffs, Defendants are bound not only by U.S. law but also by the laws and common law of Barbados.

## ALTERNATE REMEDIES ARE INAQEQUATE OR UNAVAILABLE

79.    The Federal Tort Claims Act, 28 U.S.C. §§2671-2680 ("FTCA"), does not provide Plaintiffs a remedy because their imprisonment occurred abroad, 28 U.S.C. §2680(k), and the policy and supervision claims fall within FTCA's "discretionary function or duty" exception, *id.* at §2680(a). Alternatively, to the extent that the FTCA applies to any of Plaintiffs' claims (*e.g.*, if an action for malicious prosecution arose in the United States, whereas an action for false imprisonment would have arisen abroad), Plaintiffs filed administrative FTCA claims on January 8, 2016, and the United States denied those claims by certified letter dated August 2, 2017. Specifically, Plaintiffs filed their administrative claims by facsimile and Express Mail on January 8, 2016; by letter dated January 19, 2016, the Torts Branch of the Civil Division of the Department of Justice acknowledged receipt of the facsimile and mail on January 8, 2016, and January 12, 2016, respectively.

80.    The writ of habeas corpus that Plaintiffs sought in Barbados proved inadequate to redress Plaintiffs' injuries because the Barbadian courts did not accept the pleas of individual citizens accused – falsely in this instance – of crimes versus the claims of Defendants, who hold themselves out – again, falsely in  this instance – as "representative[s] not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest… is not that it shall win a case, but that justice shall be done." Contrary to the above-quoted lofty goals that the U.S. Supreme Court set for Defendants in *Berger v. United States*, 295 U.S. 78, 88 (1935), that are etched onto the façade of the U.S. Department of Justice, Defendants here placed winning over principle and self-interest over the

public interest and justice.

## COUNT I
## WRONGFUL PROSECUTION AND IMPRISONMENT
### (DECLARATORY JUDGMENT)

81.     Plaintiffs incorporate Paragraphs 1-80 and 87-121 as if fully set forth herein.

82.     The evidence on which Defendant United States relied to indict and seek the arrest of Plaintiffs was false, and Defendant United States lacked probable cause to arrest Plaintiffs in 2004 and thereafter.

83.     The imprisonment of Plaintiffs in 2004 pending their extradition to the United States was unlawful: Defendant United States lacked probable cause to arrest Defendants in 2011 and thereafter.

84.     The imprisonment of Plaintiffs in 2011 pending their extradition to the United States was unlawful: Defendant United States lacked probable cause to detain Defendants in 2011-2014.

85.     The imprisonment of Plaintiffs from November 13, 2013 (when Mr. Gaskin waived extradition) until their release on January 9, 2014, lacked probable cause to continue their incarceration without notifying the Barbadian officials who had revoked Plaintiffs' bail that the United States no longer sought their extradition.

86.     For the foregoing reasons, the prosecution and imprisonment of Plaintiffs was without probable cause and thus unlawful and tortious.

## COUNT II
## EXPUNGEMENT
### (INJUNCTIVE RELIEF)

87.     Plaintiffs incorporate Paragraphs 1-86 and 90-121 as if fully set forth herein.

88.     Defendant United States' unlawful indictment, arrest warrant(s), and extradition

request(s) without probable cause violate Plaintiffs' right to travel and prevent their travel not only abroad – for fear of wrongful arrest or extradition to the United States – but also to the United States to visit family, including family who are citizens of the United States.

89.     For the foregoing reasons, Defendant United States' continuing publishing of the false and defamatory indictment, arrest warrant(s), and extradition requests is unlawful and tortious.

## COUNT III
## RESTRICTIONS OF THE RIGHT TO TRAVEL AND TO ASSOCIATE FREELY
### (INJUNCTIVE RELIEF)

90.     Plaintiffs incorporate Paragraphs 1-89 and 93-121 as if fully set forth herein.

91.     Defendant United States' unlawful indictment, arrest warrant(s), and extradition requests without probable cause (a) violate Plaintiffs' right to travel and prevent their travel not only abroad – for fear of wrongful extradition to the United States – but also to the United States to visit family, including family who are citizens of the United States, (b) injure Plaintiffs' reputations; (c) impair Plaintiffs' ability to obtain employment; and (d) injure Plaintiffs' credit-worthiness for not only financing but even opening accounts with banks.

92.     For the foregoing reasons, Defendant United States' ongoing impairment of Plaintiffs' rights to travel and to associate freely is unlawful and tortious.

## COUNT IV
## DENIAL OF PROCEDURAL DUE PROCESS AND FAILURE TO CORRECT
### (DAMAGES)

93.     Plaintiffs incorporate Paragraphs 1-92 and 96-121 as if fully set forth herein.

94.     Defendants May and Patten and the Section-Chief Defendants had an obligation to correct the extradition request and the materials supporting the extradition request, either or both (a) when they learned that the original extradition request and supporting materials were false *ab*

19

*initio*, or (b) when the original extradition request and supporting materials became false after their initial submittal due to events circa February 2007 to April 2008 (*i.e.*, the criminal case becoming at bottom one involving an alleged two-kg sale to a federal informant in Barbados).

95.     As a result of the actions and inaction of the above-named Defendants, Plaintiffs suffered harm to their persons, liberty, and property, and to rights under the Fifth Amendment to the Constitution and the common law of both the District of Columbia and Barbados, as applicable.

## COUNT V
## MALICIOUS PROSECUTION AND FALSE IMPRISONMENT
## (DAMAGES)

96.     Plaintiffs incorporate Paragraphs 1-95 and 104-121 as if fully set forth herein.

97.     Defendants May and Patten and the Section-Chief Defendants subjected Plaintiffs to unreasonable searches and seizures pursuant to an extradition request that was supported by false affidavits when originally prepared and filed, which became demonstrably false and known to be false by the events of February 2007 (*i.e.*, the dismissal of No. 1:04-0285-EGS, the filing of No. 1:07-cr-0137-RJD without including Messrs. Gaskin and Scantlebury, and the reduction of the case to an alleged two-kg sale to an informant in Barbados), all in violation of Plaintiffs' rights under the Fourth Amendment.

98.     All federal Defendants lacked probable cause for each Plaintiff's arrest in 2004 and at all times thereafter.

99.     All federal Defendants lacked probable cause for each Plaintiff's remand to custody in 2011 and at all times thereafter.

100.     Defendants May, Patten, and Avergun proximately caused and contributed to the unreasonable search and seizure of Plaintiffs by executing or allowing the execution of an extradition request and supporting affidavits that they knew or should have known were false.

20

101.    Defendants May, Patten, and Blanco proximately caused and contributed to the unreasonable search and seizure of Plaintiffs by engaging in, approving, or knowing about the "bait and switch" dismissal of No. 1:04-0285-EGS (which allegedly concerned a 184-kg importation into New York) to support extradition and subsequent filing of No. 1:07-cr-0137-RJD (which, at bottom, concerned an alleged two-kg sale to an informant in Barbados) without correcting and updating the extradition materials, including the apparent dropping of Messrs. Gaskin and Scantlebury as targets.

102.    Defendants May and Patten and all Section-Chief Defendants except Defendant Avergun (who had left office) proximately caused and contributed to the unreasonable search and seizure and the wrongful imprisonment of Plaintiffs by failing to correct and update the extradition materials, including the apparent dropping of Messrs. Gaskin and Scantlebury as targets.

103.    As a result of the actions and inaction of the above-named Defendants, Plaintiffs suffered harm to their persons, liberty, and property and to rights under the Fourth Amendment to the Constitution and the common law of both the District of Columbia and Barbados, as applicable.

## COUNT VI
## DELIBERATE INDIFFERENCE
## (DAMAGES)

104.    Plaintiffs incorporate Paragraphs 1-103 and 110-121 as if fully set forth herein.

105.    In his testimony on December 17, 2007, in No. 1:07-cr-0137-RJD, Defendant May was directly aware that "the extradition of Hawkesworth and his co-defendants" was "still going through legal process in Barbados," notwithstanding that he knew that his affidavit and other supporting affidavits contained false information.

106.    On information and belief, formed after reasonable inquiry, which likely could be proved with a reasonable opportunity for discovery, Defendants Patten and Blanco also had direct

knowledge that the Barbadian extradition proceedings remained underway.

107.    Defendant May's – and, if proved, Defendants Patten's and Blanco's – deliberate indifference to their obligations to correct or update the false extradition request and supporting materials thereby proximately caused Plaintiffs' subsequent, unnecessary, and unlawful remand to prison under the extradition request.

108.    Nothing prevented Defendants' notifying the Barbadian officials pursuant to Article 18 of the Extradition Treaty directly about the changed circumstances in No. 1:04-0285-EGS.

109.    As a result of the actions and inaction of the above-named Defendants, Plaintiffs suffered harm to their persons, liberty, and property and to rights under the Fourth, Fifth, and Eighth Amendment to the Constitution and the common law of both the District of Columbia and Barbados, as applicable.

## COUNT VII
## SUPERVISORY LIABILITY FOR DELIBERATE INDIFFERENCE
## (DAMAGES)

110.    Plaintiffs incorporate Paragraphs 1-109 and 117-121 as if fully set forth herein.

111.    The Criminal Division AAG and the Attorney General Defendants share supervisory and regulatory control over extradition proceedings. Specifically, pursuant to 28 C.F.R. §0.55(j), "[i]nternational extradition proceedings" "are assigned to and shall be conducted, handled, or supervised by" the Criminal Division AAG. Pursuant to 28 C.F.R. §0.5(a), however, the Attorney General retains authority to "[s]upervise and direct the administration and operation of the Department of Justice."

112.    The Attorney-General Defendants, the AAG Defendants, and the Section-Chief Defendants all have the supervisory authority to ensure that line attorneys representing the United

States comply with all legal and ethical obligations. Each such supervisory Defendant named in this Complaint could have averted Plaintiffs' wrongful imprisonment by proper action to supervise or regulate the actions of DOJ personnel serving under them.

113.    Under *Giglio v. United States*, 405 U.S. 150, 154 (1972), and numerous similar cases under U.S. and United Kingdom (*i.e.*, Barbadian) law, supervisory Defendants have an obligation to promulgate and establish procedures and regulations to address the "burden on the large prosecution offices" of procedural due-process requirements.  *Id.* (recognizing supervisors' duty to promulgate and establish "procedures and regulations … to carry [a procedural] burden and to insure communication of all relevant information on each case to every lawyer who deals with it").

114.    Based on this actual and constructive knowledge of the risk of an extradition request's leading to the incarceration of not only former suspects against whom charges have been dismissed outright but also continuing suspects against whom the charges have changed materially, the Attorney-General Defendants, AAG Defendants, and Section-Chief Defendants had a duty to ensure that federal agents acting under them were sufficiently trained, supervised, and regulated to prevent the failure to correct and update outstanding warrants and extradition requests in which the underlying circumstances have changed (*e.g.,* if a suspect is no longer wanted or his alleged crimes have changed materially).

115.    The failure of the Attorney-General Defendants, AAG Defendants, and Section-Chief Defendants to train, supervise, and regulate their subordinates proximately caused the violation of Plaintiffs' rights to be free from unreasonable searches and seizures, deprivations of due process, and deliberate indifference under the Fourth, Fifth and Eighth Amendment.

116.    As a result of the actions and inaction of the Attorney-General Defendants, AAG

Defendants, and Section-Chief Defendants, Plaintiffs suffered harm to their persons, liberty, and property, and to their rights under the Fourth, Fifth, and Eighth Amendments and the common law of both the District of Columbia and Barbados, as applicable.

## COUNT VIII
## FEDERAL TORT CLAIMS ACT
## (DAMAGES)

117.    Plaintiffs incorporate Paragraphs 1-116 and 121 as if fully set forth herein.

118.    To the extent that any of Plaintiffs' causes of action against any officers and agents of defendant United States arose within the United States (*i.e.*, did not arise abroad within the meaning of 28 U.S.C. §2680(k)), defendant United States has waived its sovereign immunity and consented to suit for damages for such claims, and the United States has assumed liability for such claims in FTCA.

119.    To the extent that the FTCA's foreign-arising exemption applies, the entire FTCA does not apply, 28 U.S.C. §2680 ("provisions of this chapter … shall not apply"), including the FTCA's exclusivity clause, 28 U.S.C. §2679(b)(1). Where the FTCA's exclusivity clause does not apply, Plaintiffs are free to invoke the law of either the District of Columbia or Barbados in a diversity or federal-question action.

120.    As a result of the actions and inaction of officers and agents of defendant United States of America, Plaintiffs suffered harm to their persons, liberty, and property, and to their rights under the Fourth, Fifth, and Eighth Amendments, in violation of the FTCA for any of Plaintiffs' claims that arose within the United States for purposes of 28 U.S.C. §2680(k).

## PRAYER FOR RELIEF

121.    Wherefore, Plaintiffs Gaskin, Scantlebury, and Hawkesworth respectfully pray for relief and a judgment against Defendants:

A.   Pursuant to 5 U.S.C. §706, 28 U.S.C. §§1331, 1651, 2201-2202, and FED. R. CIV. PROC. 57, a Declaratory Judgment that:

(i)   There was no probable cause to arrest or imprison Plaintiffs – pending extradition – when the United States commenced No. 1:04-0285-EGS;

(ii)   There was no probable cause to arrest or imprison Plaintiffs – pending extradition – when Plaintiffs were remanded to custody in 2011 in connection with No. 1:04-0285-EGS;

(iii)   The United States lacked personal jurisdiction over the Plaintiffs for the actions that the United States took in No. 1:04-0285-EGS.

B.   Pursuant to 5 U.S.C. §706, 28 U.S.C. §§1331, 2202, 1651, and this Court's equitable powers, an Order providing that:

(i)   Defendant United States and its officers and agents are enjoined from detaining or restricting Plaintiffs in their travels and from otherwise impairing, flagging, or monitoring Plaintiffs' travels or associations within the United States or abroad on the basis of the actions alleged in No. 1:04-0285-EGS.

(ii)   Defendant United States and its officers and agents are enjoined from relying on the actions alleged in No. 1:04-0285-EGS for any purpose, including immigration and visas.

(iii)   Defendant United States, through its chief law-enforcement officer, is enjoined to write and file with the Barbadian government pursuant to Article 18 of the Extradition Treaty a statement that Plaintiffs were falsely accused on criminal activity in the extradition request in connection with No. 1:04-0285-EGS, that DOJ was aware of the falsity of its prior statements, and that DOJ failed to correct those

statements.

C.      Ordering Defendants to pay, jointly and severally, $20,000,000 in compensatory damages

to each Mr. Gaskin, Mr. Scantlebury, and Mr. Hawkesworth;

D.      Ordering Defendants to pay, jointly and severally, $5,000,000 in punitive damages to each

Mr. Gaskin, Mr. Scantlebury, and Mr. Hawkesworth;

E.      Ordering Defendants to pay, jointly or severally, to each Plaintiff the present value of the

lifetime medical damages that each Plaintiff shall prove at trial;

F.      Pursuant to 28 U.S.C. §2412 and any other applicable provisions of law or equity, awarding

Plaintiffs' costs, attorneys' fees, and other disbursements for this action; and

G.      Granting Plaintiffs such other and further relief as this Court deems just and proper.

## JURY DEMAND

122.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial

by jury as to all issues triable by a jury.

Dated: March 13, 2020                           Respectfully submitted,

                                                  /s/ Lawrence J. Joseph

                                                Lawrence J. Joseph, D.C. Bar No. 464777

                                                1250 Connecticut Ave, NW, Suite 200
                                                Washington, DC 20036
                                                Telephone: (202) 355-9452
                                                Telecopier: (202) 318-2254
                                                Email: ljoseph@larryjoseph.com

                                                *Counsel for Plaintiffs*