UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SEAN P. GASKIN et al.,

        Plaintiffs,

              v.

STEPHEN M. MAY et al.,

        Defendants.

Civil Action No. 15-0033 (EGS)

**<u>REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

ARGUMENT ...................................................................................................................... 3

   I.    There is No Waiver of Sovereign Immunity for Plaintiffs' Tort Damages Claims ......... 3

     A.   The FTCA Is the Sole Waiver of Immunity for Tort Claims
        Against the United States and its Employees ................................................ 4

     B.   A Judicially Created Common Law Tort Remedy Does Not Create a Waiver of
        Sovereign Immunity ...................................................................................... 5

     C.   Plaintiffs' Contentions Are Untenable Under the FTCA ............................... 8

   II.   Plaintiffs' Remaining Jurisdiction Arguments Are Misplaced ..................................... 10

     A.   The Court Does Not Possess Diversity Jurisdiction ...................................... 10

     B.   The Court Does Not Possess Supplemental Jurisdiction ............................... 12

   III.  Plaintiffs Fail to State Constitutional Claims Under *Bivens* .......................... 12

   IV.  Individual Defendants Enjoy Immunity From Suit ...................................... 13

     A.   Defendants May and Patten Are Protected by Absolute Immunity ............... 13

     B.   All Defendants Are Protected by Qualified Immunity ................................... 15

   V.   Plaintiffs Have Failed to State a Claim ...................................................... 15

     A.   Procedural Due Process ................................................................................ 16

     B.   Malicious Prosecution and False Imprisonment ........................................... 16

     C.   Deliberate Indifference ................................................................................. 18

     D.   Supervisory Liability for Deliberate Indifference ......................................... 18

     E.   Expungement ................................................................................................ 19

     F.   Right to Travel and Associate ....................................................................... 20

CONCLUSION .................................................................................................................. 21

# TABLE OF AUTHORITIES

<u>Cases</u>

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................... 19

*Atherton v. D.C. Off. of Mayor*,
    567 F.3d 672 (D.C. Cir. 2009) ...................................................................................... 14

*Barrows v. Jackson*,
    346 U.S. 249 (1953)....................................................................................................... 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................... 19

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
    403 U.S. 388 (1971).................................................................................................. 2, 12

*Briggs v. Goodwin*,
    712 F.2d 1444 (D.C. Cir. 1983) .................................................................................... 13

*Briscoe v. LaHue*,
    460 U.S. 325 (1983)....................................................................................................... 13

*Briscoe v. United States*,
    268 F. Supp. 3d 1 (D.D.C. 2017) ............................................................................ 17, 18

*Budik v. Ashley*,
    36 F. Supp. 3d 132 (D.D.C. 2014) ............................................................................... 19

*Burgess v. John F. Kennedy Ctr. for Performing Arts, Civ. A.*,
    No. 19-1834, 2020 WL 1984239 (D.D.C. Apr. 27, 2020)....................................... 11

*Burrows v. Cherokee County Sheriff's Office*,
    38 Fed. Appx. 504 (10th Cir. 2002).............................................................................. 13

*Caldwell v. Argosy Univ.*,
    797 F. Supp. 2d 25 (D.D.C. 2011) ............................................................................... 18

*Corley v. United States*,
    556 U.S. 303, (2009)........................................................................................................ 9

*Council on Am. Islamic Rels. v. Ballenger*,
    444 F.3d 659 (D.C. Cir. 2006) ........................................................................................ 4

*Dababnah v. Keller–Burnside*,
    208 F.3d 467 (4th Cir. 2000) ................................................................. 13

*English v. D.C.*,
    717 F.3d 968 (D.C. Cir. 2013) ............................................................... 16

*Enlow v. Tishomingo Cty.*,
    962 F.2d 501 (5th Cir. 1992) ................................................................. 14

*FDIC v. Meyer*,
    510 U.S. 471 (1994) ........................................................................... 3, 6

*Forrester v. White*,
    484 U.S. 219 (1988) ............................................................................. 14

*Gable v. United States*,
    931 F. Supp. 2d 143 (D.D.C. 2013) ........................................................ 4

*Ganem v. Heckler*,
    746 F.2d 844 (D.C. Cir. 1984) .............................................................. 7, 8

*Gerstein v. Pugh*,
    420 U.S. 103 (1975) ............................................................................. 17

*Gross v. United States*,
    771 F.3d 10 (D.C. Cir. 2014) ................................................................. 4

*Harris v. D.C.*,
    696 F. Supp. 2d 123 (D.D.C. 2010) ...................................................... 17

*Harris v. U.S. Dep't of Veterans Affairs*,
    776 F.3d 907 (2015) ............................................................................. 17

*Hernandez v. Mesa*,
    140 S. Ct. 735 (2020) ......................................................................... 8, 10

*Hibbs v. Winn*,
    542 U.S. 88 (2004) ................................................................................ 9

*Home Depot U. S. A., Inc. v. Jackson*,
    139 S. Ct. 1743 (2019) .......................................................................... 3

*Hui v. Castaneda*,
    559 U.S. 799 (2010) ............................................................................. 10

*Imbler v. Pachtman,*
    424 U.S. 409 (1976) ................................................................................................ 13

*Lane v. Pena,*
    518 U.S. 187 (1996) .................................................................................................. 6

*Larson v. Northrop Corp.,*
    21 F.3d 1164 (D.C. Cir. 1994) ................................................................................ 19

*Liles v. United States,*
    638 F. Supp. 963 (D.D.C.1986) .............................................................................. 17

*Loughlin v. United States,*
    393 F.3d 155 (D.C. Cir. 2004) ................................................................................ 12

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) ................................................................................................ 16

*Millepede Mktg. Ltd. v. Harsley,*
    928 F. Supp. 2d 109 (D.D.C. 2013) .......................................................................... 7

*Nattah v. Bush,*
    770 F. Supp. 2d 193 (D.D.C. 2011) ........................................................................ 20

*Rehberg v. Paulk,*
    566 U.S. 356 (2012) ................................................................................................ 14

*Sherrod v. McHugh,*
    334 F. Supp. 3d 219 (D.D.C. 2016) ........................................................................ 17

*Simmons v. Himmelreich,*
    136 S. Ct. 1843 (2016) .............................................................................................. 9

*Sosa v. Alvarez-Machain,*
    542 U.S. 692 (2004) ................................................................................................ 11

*Stephenson v. Cox,*
    223 F.Supp.2d 119 (D.D.C. 2002) .......................................................................... 10

*Taylor v. Riojas,*
    141 S.Ct. 52 (2020) ................................................................................................. 15

*Thompson v. Peace Corps,*
    159 F. Supp. 3d 56 (D.D.C. 2016) ............................................................................ 4

*Union Ins. Co. v. United States,*
   999 F.2d 581 (D.C. Cir. 1993) .................................................................. 11

*United States v. Mitchell,*
   463 U.S. 206 (1983) .............................................................................. 6

*United States v. Scantlebury,*
   921 F.3d 241 (D.C. Cir. 2019) ................................................................ 19

*United States v. Smith,*
   499 U.S. 160 (1991) .............................................................................. 9

*Whittaker v. Ct. Servs. & Offender Supervision Agency for D.C.,*
   401 F. Supp. 3d 170 (D.D.C. 2019) .......................................................... 11

*Ziglar v. Abbasi,*
   137 S. Ct. 1843 (2017) ........................................................................... 8

<u>Statutes</u>

28 U.S.C. § 1346(b) ............................................................................. 5, 7

28 U.S.C. § 2679(b)(1) ........................................................................ 9, 11

28 U.S.C. § 2679(d)(1) ............................................................................ 8

28 U.S.C. § 2680 ................................................................................. 5,9

28 U.S.C. § 2680(a) ............................................................................ 5, 10

28 U.S.C. § 2680(k) ............................................................................... 5

28 U.S.C. § 2680(h) .............................................................................. 10

28 U.S.C. §§ 2671-2680 .......................................................................... 5

District of Columbia Court Reorganization Act ("DCCRA), Pub.L. No. 91–358, 84 Stat. 475,

   (July 29, 1970) ................................................................................. 6

The United States of America and thirteen individually-named Defendants,[1] all current or former employees or officials of the U.S. Department of Justice (the "Department") (collectively "Defendants"), by and through undersigned counsel, submit their reply in support of their Motion to Dismiss ("Motion"; ECF No. 49).

It is not hyperbole to state that Plaintiffs' Opposition largely confirms that Defendants' Motion should be granted.  Among the eight claims asserted in Plaintiffs' Second Amended Complaint ("SAC"; ECF No. 47), Plaintiffs alleged five tort damages claims against Defendants arising from injuries allegedly suffered in Barbados related to a past attempt to extradite Defendants from Barbados to face criminal charges in the United States.  In their Memorandum in Opposition to Defendants' Motion to Dismiss ("Opp."; ECF No. 50), Plaintiffs explicitly concede that their claims are covered by the Federal Tort Claims Act's ("FTCA") exception to the FTCA's waiver of sovereign immunity for injuries arising in a foreign country.  To avoid dismissal, however, Plaintiffs argue that the entire FTCA does not apply and that, with the troublesome FTCA out of the way, the Court may proceed to apply the largely un-pleaded law of Barbados in a diversity jurisdiction action.  Plaintiffs' interpretation of the FTCA is nonsensical, contrary to the explicit intention of Congress, and unsupported by legal authority.

---

[1]    Plaintiffs sued the following people in their individual and official capacities, even though the Second Amended Complaint often lacks any factual allegations as to their supposedly wrongful conduct: Stephen M. May, a Senior Trial Attorney in the Narcotic and Dangerous Drug Section ("NDDS") within the U.S. Department of Justice's Criminal Division; Gordon Patten, Jr., a Special Agent in the U.S. Drug Enforcement Administration; Jodi L. Avergun, Kenneth A. Blanco, Paul M. O'Brien, and Arthur Wyatt, who were at various times Chief of NDDS (collectively, "Section-Chief Defendants"); Christopher A. Wray, Alice S. Fisher, and Lanny A. Breuer, who were once the Assistant Attorney General ("AAG") for the Criminal Division (collectively, "AAG Defendants"); and John D. Ashcroft, Alberto Gonzales, Michael B. Mukasey, and Eric H. Holder, Jr., who served previously as Attorney General of the United States (collectively, "Attorney-General Defendants").

Plaintiffs also alleged in these tort claims that Defendants' conduct violated Plaintiffs' rights under the U.S. Constitution.  Similarly, in their Opposition, Plaintiffs now concede that they cannot state actionable constitutional claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  To soften the sting of that concession, Plaintiffs argue that perhaps this Court could create its own "*Bivens*-style" common law torts and apply those to-be-determined tort claims in this suit.  This argument too is bereft of legal support.

In addition to the foregoing explicit concessions, Plaintiffs' Opposition makes implicit concessions by failing to rebut or even address many of the arguments made in Defendants' Motion.  The Opposition is silent on the fact that Plaintiffs' tort claims are barred by the FTCA's statute of limitations, as well as the discretionary function and intentional tort exceptions.  The Opposition opts not to seriously challenge the existence of qualified immunity for individual Defendants.  The Opposition also often fails to defend the many pleading failures in the SAC.  So even if the Court had subject matter jurisdiction and individual Defendants did not enjoy absolute or qualified immunity, Plaintiffs have failed to state plausible claims for relief against any individual Defendant.  Indeed, Plaintiffs sued thirteen individuals for supposedly "egregious" conduct, yet Plaintiffs' Opposition does not even mention their names (except on page one where they are listed as Defendants).

This civil suit against members of the Department of Justice is retaliatory litigation repeating the same arguments made before this Court when Plaintiffs unsuccessfully moved to change the Government's dismissal of charges against Plaintiffs from one without prejudice to one with prejudice.  Thus, this suit is based on the same mischaracterization of the record in the underlying criminal proceeding.  The crux of Plaintiffs' suit concerns statements in affidavits supporting extradition from Barbados that Plaintiffs contend contained false statements and a

supposed failure to correct those statements or update extradition materials as subsequent prosecutorial decisions were made.  Significantly, much of what Plaintiffs rely on concerns statements that "were made in the affidavits supporting the extradition of [an alleged co-conspirator]; not the affidavits supporting the extradition of [Plaintiffs]," as this Court already determined in the underlying criminal proceeding.  *See* Memorandum Opinion, No. 04-cr-00285, ECF No. 133, at 24.

For all of these reasons, Defendants respectfully request that the Court dismiss the SAC in its entirety.

## ARGUMENT

### I.    There is No Waiver of Sovereign Immunity for Plaintiffs' Tort Damages Claims

In their Opposition, Plaintiffs confuse two distinct concepts of subject matter jurisprudence: (1) the Court's authority to hear a suit under a constitutional or statutory grant of jurisdiction, *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) ("[L]ower federal-court jurisdiction is [ ] limited to those subjects encompassed within a statutory grant of jurisdiction. Accordingly, the district courts may not exercise jurisdiction absent a statutory basis.") (internal quotation marks and citations omitted); and (2) the need for the United States to waive its sovereign immunity to be subject to suit even where the Court otherwise has jurisdiction to entertain it, *see FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Sovereign immunity is jurisdictional in nature.") (citations omitted).

The United States' motion to dismiss is based on the latter—the waiver of sovereign immunity set forth in the FTCA does not apply to Plaintiffs' claims.  Plaintiffs' Opposition, however, largely focuses on the former; arguing that various provisions of Title 28 give the Court

statutory authority to entertain their claims.  But without a waiver of sovereign immunity, the Court

cannot entertain Plaintiffs' claims.  Plaintiffs' jurisdictional misunderstandings doom their claims.

### A.    The FTCA Is the Sole Waiver of Immunity for Tort Claims Against the United States and its Employees

Plaintiffs "concede that the waiver of sovereign immunity in the Federal Tort Claims Act

. . . does not apply to injuries—such as those suffered by Plaintiffs in Barbados—that arise abroad."

Opp. at 1.  This concession leads inexorably to the conclusion that Plaintiffs' common law tort

damages claims (Counts IV-VIII) should be dismissed.  It is well-settled that the FTCA represents

the United States' sole waiver of sovereign immunity to be sued for tort actions.  *See, e.g., Gable*

*v. United States*, 931 F. Supp. 2d 143, 147 (D.D.C. 2013) ("The exclusive remedy for torts

committed by Government employees in the scope of their employment is a suit against the

Government itself under the [FTCA.]");  *Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659,

666 (D.C. Cir. 2006) (finding no wavier of sovereign immunity for torts falling into an FTCA

exception; noting "Sovereign immunity bars suits against the United States absent an explicit and

unequivocal waiver.").   Consequently, the Court lacks subject matter jurisdiction because

sovereign immunity has not been waived, and the claim must be dismissed for lack of subject

matter jurisdiction.  *See, e.g.*, *Gross v. United States*, 771 F.3d 10, 12-13 (D.C. Cir. 2014);

*Thompson v. Peace Corps*, 159 F. Supp. 3d 56, 62 (D.D.C. 2016).

Nor does the Court have subject matter jurisdiction for tort damages claims against the

individual Defendants in their capacity as Government employees.  The Federal Employees

Liability Reform and Tort Compensation Act of 1988, often referred to as the Westfall Act

(codified in part in various subsections of 28 U.S.C. §§ 2671, 2674, 2679), amended the FTCA to

make the FTCA the exclusive remedy for all job-related damages claims against federal

employees, except for damages claims arising under the Federal Constitution and other federal

4

statutes.  The Westfall Act accomplishes this exclusivity by allowing the United States to substitute for the individual employee in the litigation.  The Act states that "[u]pon certification . . . that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant."  *Id*. § 2679(d)(1).  Here, Defendants offered the Certification of Daniel F. Van Horn, then Chief of the Civil Division in the Office of the United States Attorney for the District of Columbia, certifying that all individual Defendants were acting within the scope of their employment as employees of the federal government at the time of the incidents alleged in the SAC.  ECF No. 49-2.  Plaintiffs do not directly challenge the certification or substitution.  The FTCA further directs that no other civil action may stand against the employee because the FTCA's remedy is exclusive: "[t]he remedy" against the Government under the FTCA "is exclusive of any other civil action or proceeding for money damages . . . against the employee" and "[a]ny other civil action or proceeding for money damages . . . against the employee . . . is precluded."  28 U.S.C. § 2679(b)(1).  Therefore, no other common law tort claims may proceed against the individual Defendants.

### B.     A Judicially Created Common Law Tort Remedy Does Not Create a Waiver of Sovereign Immunity

Because Plaintiffs are forced to admit that their tort claims against the United States and the individual Defendants acting in their official capacities would be barred by the FTCA, Plaintiffs invite the Court to create a remedy, arguing "nothing . . . precludes Plaintiffs' proceeding on a *Bivens*-style tort fashioned under *this Court's common-law powers* or in a pre-FTCA diversity action based on *Barbados law*."  Opp. at 11.  It is an audacious but nonetheless meritless argument.

As noted above, sovereign immunity shields the United States from damages suits. *See Meyer*, 510 U.S. at 475. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The FTCA, codified at 28 U.S.C. § 1346(b) and 28 U.S.C. §§ 2671-2680, provides a limited waiver of the federal government's sovereign immunity when its employees are negligent within the scope of their employment in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Yet this waiver is subject to a number of exceptions that significantly narrow the scope of the waiver of sovereign immunity. Specifically, 28 U.S.C. § 2680 states that the "provisions of . . . section 1346(b) of this title shall not apply to" a variety of situations, including where a Government employee is "perform[ing] a discretionary function" (*id*. § 2680(a)) and for "[a]ny claim arising in a foreign country" (*id*. § 2680(k)). Plaintiffs have conceded that their injuries arise abroad and fit squarely within the exception of Section 2680(k). Opp. at 1.

In the face of this statutory scheme, the Court cannot imply a waiver of sovereign immunity to permit a judicially created *Bivens*-like remedy against the United States out of whole cloth. The Supreme Court has refused to extend *Bivens* to suits against the United States, *Meyer*, 510 U.S. at 486, recognizing that even where courts imply a private right of action they do not imply a concomitant waiver of sovereign immunity. Instead, "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied[.]" *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted). As such, even were this Court to have some long-dormant power to create common law through the tortured reading of a series of judicial decisions and statutory enactments as Plaintiffs suggest, Opp. at 13-16, it would do nothing to

permit this suit as the Court cannot find a waiver of sovereign immunity when Congress has not created one.

Moreover, Plaintiffs argument that the federal District Court for the District of Columbia is, at present, a common law court that "can infer new torts" of its choosing is plainly wrong. Opp. at 13. While this Court once had common law and equity jurisdiction akin to a state court of general jurisdiction, "[t]hose days are long over." *Millepede Mktg. Ltd. v. Harsley*, 928 F. Supp. 2d 109, 121 (D.D.C. 2013) (rejecting plaintiff's argument that this Court has common law equity jurisdiction). As Plaintiffs acknowledge, the District of Columbia Court Reorganization Act of 1970 ("DCCRA), Pub.L. No. 91–358, 84 Stat. 475, transferred this Court's general jurisdiction common law powers to a local District of Columbia court system fifty years ago. Nonetheless, Plaintiffs contend the DCCRA did not take away common law powers "*vis-à-vis* federal actors" and so Defendants are fair game to have to defend yet-to-be-determined tort claims fashioned by this Court. Opp. at 13. Plaintiffs offer no legal authority for or even an explanation regarding how this Court could have common law powers when the defendant is a "federal actor"—whatever that is precisely, as Plaintiffs do not define the term—yet not have common law powers when the defendant is a non-federal actor.

Plaintiffs suggest that "both the D.C. Circuit and Congress have indicated" that common law "power remains with this Court." Opp. at 14. In truth, neither have so indicated. With respect to the D.C. Circuit, Plaintiff relies on *Ganem v. Heckler*, 746 F.2d 844 (D.C. Cir. 1984). In *Ganem*, the court addressed the question of whether a writ of mandamus is available to enforce the provisions of the Social Security Act ("SSA") when a portion of the Act (42 U.S.C. § 405(h)) explicitly precludes subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1346. *Id*. at 848. The Court held that mandamus jurisdiction was not precluded by the SSA, not

only because § 1361—where mandamus jurisdiction is now codified—is not mentioned in § 405(h), but also because this District Court had a historic, uncodified power to issue writs of mandamus and that power was not precluded in the original language of the SSA from 1939.  *Id.* at 850-51.  Nothing in *Ganem* actually supports Plaintiffs' proposition that this Court can *now* fashion its own torts.  And with respect to Congress, Plaintiff cites legislative history of the Administrative Procedure Act, which does not appear to be even relevant to the issue of whether this Court presently possesses general jurisdiction common law powers.

Plaintiffs' tortured argument that this Court is somehow a super District Court is directly refuted by the current statutory authorization for this Court, which dictates that this Court is a "United States District Court (28 U.S.C. §§ 88, 132), and the Supreme Court's unambiguous holding that "federal courts today cannot fashion new claims in the way that they could before 1938[,]" including under the common law.  *Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020).

Lastly, the Supreme Court has recently cabined its judicially created remedies to only three contexts, recognizing *Bivens* as a relic of a bygone era of jurisprudence where the Court implied such remedies as were necessary to make effective a statute's purpose.  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017).  Now, unless a statute displays an intent to create private remedy, "then a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."  *Id.* at 1855-56.  As such, the Supreme Court's recent holdings present another fatal blow to Plaintiffs' invitation for this Court to exercise legislative powers and create remedies when Congress has not.

### C.   Plaintiffs' Contentions Are Untenable Under the FTCA

Plaintiffs' effort to avoid the FTCA is also predicated on an unfounded reading of the statute that they argue causes the "*entire FTCA* [ ] not to apply" to Plaintiffs.  Opp. at 8.  The argument is based on Section 2680, which states that "[t]he *provisions of this chapter* and section

1346(b) shall not apply" to the listed excepted situations.  Opp. at 8-10.  According to Plaintiffs, because the foreign injury exception applies to their claims, the exclusive remedy provision at Section 2679 "shall not apply[,]" as it is one of the "provisions of this chapter[.]"  Opp. at 9. Obviously, that is not a sensible interpretation of the FTCA, a statute designed to be "the exclusive mode of recovery for the tort of a Government employee."  *United States v. Smith*, 499 U.S. 160, 166 (1991).  Plaintiffs rely on the Supreme Court's decision in *Simmons v. Himmelreich*, 136 S. Ct. 1843 (2016), wherein the Court held the judgment bar (another of the provisions "of this chapter") "shall not apply" to the categories of claims in which one of the Section 2680 exceptions is triggered.  Plaintiffs opine that *Simmons* "eviscerated" *Smith*, Opp. at 11, but any reading of *Simmons* shows that is not the case.

Citing the "unique language" of the Westfall Act, the *Simmons* Court ruled "*Smith* is distinguishable from this case."  136 S. Ct. at 1849.  The Court explained that in *Smith* the Court found that the Westfall Act and in particular the exclusivity provision at Section 2679 was "most naturally read" and "intended to apply to those 'Exceptions.'"  *Id*. at 1848-49.  In other words, the Supreme Court found it was a sensible interpretation of the FTCA for the judgment bar not to apply in a situation covered by an exception but not a sensible interpretation of the FTCA for the exclusivity provision to be rendered without effect in situations where an exception applies.  To conclude otherwise, as Plaintiffs invite this Court to do, would render nugatory the express statutory exclusivity language and the intent of Congress.  This construction of the FTCA runs counter to a basic canon of statutory interpretation that "'[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'"  *Corley v. United States*, 556 U.S. 303, 314, (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)).

The Section 2680 exceptions exist to narrow the scope of the waiver immunity to suit, not to expand it. And while Plaintiffs have explicitly conceded that the foreign injury exception found at Section 2680(k) applies to Plaintiffs' claims, Plaintiffs also have implicitly conceded Defendants' arguments that other exceptions to the waiver of sovereign immunity apply. That is because Plaintiffs failed to rebut Defendants' arguments that the tort claims are also barred by the discretionary function exception (28 U.S.C. § 2680(a)), Mot. at 10-12, and the intentional torts exception (28 U.S.C. § 2680(h)), Mot. at 10. Similarly, Plaintiffs did not deny that the tort Claims are untimely under the FTCA. *See* Mot. at 7. Therefore, these are additional grounds for the dismissal of Plaintiffs' tort claims. *See Stephenson v. Cox*, 223 F.Supp.2d 119, 121 (D.D.C. 2002) ("[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded.").

## II.   <u>Plaintiffs' Remaining Jurisdiction Arguments Are Misplaced</u>

Shooting past the bar sovereign immunity and the FTCA present in this case, Plaintiffs argue that the Court otherwise has the authority and jurisdiction to hear claims.

### A.   **The Court Does Not Possess Diversity Jurisdiction**

Plaintiffs contend that this Court possesses diversity jurisdiction, and that through diversity jurisdiction the "common law of Barbados should apply." Opp. at 7. Not so.

*First*, there is no diversity jurisdiction because, as explained above, this Court's jurisdiction to hear tort damages suits against the United States and its employees acting within the scope of their employment is granted only through the FTCA and the remedies provided by the FTCA are "exclusive of any other civil action." *See* 28 U.S.C. § 2679(b)(1); *Hernandez*, 140 S. Ct. at 748 ("[The Westfall] Act makes the Federal Tort Claims Act (FTCA) 'the exclusive remedy for most claims against Government employees arising out of their official conduct.'") (quoting *Hui v.*

*Castaneda*, 559 U.S. 799, 806 (2010)).  And as discussed above, Plaintiffs cannot conveniently dispense with the FTCA in favor of other sources of jurisdiction and causes of action.

In particular, Plaintiffs cite to a discussion in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), that through differing state choice-of-law tests, a court "can end up picking foreign law" to apply.  Opp. at 7.  Plaintiffs' reference to *Sosa* "buries the lead" as they say in journalism.  The Supreme Court in *Sosa* held that claims based on injuries in a foreign country, as Plaintiffs concede are at issue here, are barred through FTCA's exception to the waiver of sovereign immunity.  *Sosa*, 542 U.S. at 712.  The Court found that "[t]he application of foreign substantive law exemplified in these cases was, however, what Congress intended to avoid by the foreign country exception." *Id*. at 707.  There is simply no reasonable basis to conclude that the Supreme Court would hold that Congress waived the sovereign immunity of the United States so that it could defend diversity actions applying foreign substantive law.

*Second*, even if the specific confines of the FTCA prevent Plaintiffs from resorting to more general grants of jurisdiction, it has long been held that diversity jurisdiction does not lie against the United States or its agencies because they are not citizens of any state.  *See, e.g., Com. Union Ins. Co. v. United States*, 999 F.2d 581, 584 (D.C. Cir. 1993) ("It is well established [ ] that the United States is not a citizen for diversity purposes and that 'U.S. agencies cannot be sued in diversity.'").  Moreover, Courts in this District have previously rejected efforts to avoid the FTCA by invoking diversity jurisdiction.  They have held that the Court lacks diversity jurisdiction in suits alleging tort damages claims against the federal Government and its employees.  *See Burgess v. John F. Kennedy Ctr. for Performing Arts*, Civ. A. No. 19-1834, 2020 WL 1984239, at *3 (D.D.C. Apr. 27, 2020) (no diversity jurisdiction in tort suit against Kennedy Center employee); *Whittaker v. Ct. Servs. & Offender Supervision Agency for D.C.*, 401 F. Supp. 3d 170, 178 (D.D.C.

2019) ("Courts cannot proceed under diversity jurisdiction when the defendants are the United States government or an agency thereof.").

Accordingly, the Court should reject Plaintiffs' effort to use diversity jurisdiction in any form as a mechanism to avoid the FTCA.

### B.    The Court Does Not Possess Supplemental Jurisdiction

In another effort to evade the FTCA and sovereign immunity, Plaintiffs argue that their alleged claim for expungement could be the basis for the Court's supplemental jurisdiction under 28. U.S.C. § 1367 to hear "damages claims for their injuries under District of Columbia tort law." Opp. at 8.  Plaintiffs' contention is also predicated on the unfounded notion that the FTCA does not govern Plaintiffs' tort claims.  Because the common law tort claims are precluded under the FTCA, there are no claims "under District of Columbia tort law" to hear under the Court's supplemental jurisdiction.  Further, the failure to state a claim for expungement, or any other claim that might supply federal question jurisdiction, deprives the Court of supplemental jurisdiction. *See Loughlin v. United States*, 393 F.3d 155, 172 (D.C. Cir. 2004).  As discussed in Defendants' Motion and further below, Plaintiffs have not stated plausible claims for relief that would even allow for the possibility of claims to be heard through supplemental jurisdiction.

### III.    Plaintiffs Fail to State Constitutional Claims Under *Bivens*

Even though Plaintiffs assert non-statutory damages claims for alleged violations under the U.S. Constitution (specifically of the Fourth, Fifth and Eighth Amendments) in Counts IV-VII, and thus an implied cause of action that could only be available pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Plaintiffs concede that they have not stated a *Bivens* action.  Opp. at 11 ("Plaintiffs have no quarrel with Defendants' suggestion that a *Bivens* action is not available.").  Accordingly, Plaintiffs' constitutional damages claims against the individual Defendants should be dismissed.  *See* Mot. at 12-19.

IV.    **Individual Defendants Enjoy Immunity From Suit**

Plaintiffs' individual capacity claims should be dismissed because Defendants enjoy absolute or qualified immunity from liability.

A.    **Defendants May and Patten Are Protected by Absolute Immunity**

Absolute immunity is available to those whose "activities were intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Because Defendant May, a NDDS attorney, was part of the team working on obtaining Plaintiffs' presence in the United States, through extradition, for criminal prosecution, SAC ¶¶ 5, 43, 57, he enjoys absolute immunity for his affidavit and statements in support of extradition. *See* Mot. at 19-20. Plaintiffs argue that because extradition is a civil process, "prosecutors are not prosecuting when they are seeking extradition." Opp. at 16. But in doing so, Plaintiffs ignore the case law holding that prosecutors are entitled to absolute immunity from suits as a result of their involvement in the extradition process. *See* Mot. at 20 (citing cases); *see also Dababnah v. Keller–Burnsid*e, 208 F.3d 467, 472 (4th Cir. 2000); *Burrows v. Cherokee County Sheriff's Office*, 38 Fed. Appx. 504, 506 (10th Cir. 2002). The supposedly civil nature of extradition was not an obstacle for these courts.

Plaintiff also disputes the application of absolute immunity for witness statements along the lines of the affidavit executed by Defendant Patten, a DEA agent. Plaintiffs argue that it is an "unjustified extension" of *Briscoe v. LaHue*, 460 U.S. 325 (1983), wherein the Supreme Court held that government trial witnesses may claim absolute immunity. Yet, absolute immunity is not confined to the facts of *Briscoe*. For example, the D.C. Circuit held that a prosecutor who allegedly provided false testimony to a grand jury enjoyed absolute immunity. *See Briggs v. Goodwin*, 712

F.2d 1444, 1448 (D.C. Cir. 1983).  And the Supreme Court later confirmed that a grand jury witness enjoys absolute immunity.  *See Rehberg v. Paulk*, 566 U.S. 356, 375 (2012).[2]

The analysis for absolute immunity is a "functional" one, and the factors that justify absolute immunity for trial and grand jury witnesses apply with equal force to witnesses testifying in support of extradition, which occurs after grand jury indictment but before trial.  In each of these contexts, a "witness' fear of retaliatory litigation may deprive the tribunal" of information.  *Id*. at 367.  The doctrine of absolute immunity exists because when "'officials are threatened with personal liability for acts taken pursuant to their official duties, they may well . . . skew their decisions in ways that result in less than full fidelity'" to their duties and thereby "'detract from the rule of law instead of contributing to it.'"  *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672 (D.C. Cir. 2009) (quoting *Forrester v. White*, 484 U.S. 219, 223 (1988)).

Further, "the deterrent of potential civil liability" is not needed to prevent perjurious testimony—and here, Plaintiffs complain of a supposedly "false affidavit" (Opp. at 17)—"because other sanctions—chiefly prosecution for perjury—provided a sufficient deterrent."  *Rehberg*, 566 U.S. at 367.  Plaintiffs unwittingly reinforce this point by suggesting that May and Patten's allegedly false statements "are criminal" under 18 U.S.C. § 1001(a).  Opp. at 18.  The facts do not remotely support Plaintiffs suggestion of criminal liability, but if they did, courts have determined that "retaliatory litigation" for civil damages, as exists here, is not the appropriate mechanism to police such conduct.

---

[2]     *Rehberg* calls into question the holding of *Enlow v. Tishomingo Cty*., 962 F.2d 501 (5th Cir. 1992), which Plaintiffs cite in their Opposition to argue against an "extension" of *Briscoe*. *See* Opp. at 17.

**B.      All Defendants Are Protected by Qualified Immunity**

All individual Defendants are protected by qualified immunity.  Plaintiffs' Opposition forgoes any serious rebuttal to Defendants' Motion, wherein Defendants established that the conclusory SAC fails to offer factual allegations showing any individual Defendant violated statutory or constitutional rights "clearly established" at the time of the challenged conduct, which would deprive them of qualified immunity.  *See* Mot. at 21-24.  Again for example, there are zero factual allegations in the SAC regarding the Attorney General Defendants and the AAG Defendants, both individually and collectively.  Mirroring the conclusory SAC, Plaintiffs dispute the application of qualified immunity with the conclusory argument that all individual Defendants' conduct were "egregious under *Taylor* [*v. Riojas*.]"  Opp. at 20.  *Taylor v. Riojas*, 141 S.Ct. 52 (2020), however, offers no assistance to Plaintiffs.  In *Taylor*, the Court vacated a judgment in which correctional officers had been granted qualified immunity in a case involving a violation of the Eighth Amendment prohibition on cruel and unusual punishment.  As an inmate, Plaintiff had been confined for days in cells "covered, nearly floor to ceiling" in feces or overflowing with raw sewage.  *Id*. at 53.  Other than labeling individual Defendants' conduct "egregious," Plaintiffs offer only a policy argument against the doctrine of qualified immunity.  For example, Plaintiffs argue the doctrine "harms law-enforcement officers" (even though almost all individual Defendants are or were Department attorneys).  Opp. at 19.  In any event, Defendants do not address Plaintiffs' policy arguments because they are not relevant to whether the doctrine is applicable to the pleading in this case in accordance with established precedent.

**V.      <u>Plaintiffs Have Failed to State a Claim</u>**

Defendants' Motion explained how the SAC failed to allege a single plausible claim for relief, and Plaintiffs' Opposition offers nothing to change that conclusion.

### A.    Procedural Due Process

To state a claim for violation of procedural due process a plaintiff must allege that he or she has a (1) protected liberty or property interest that the defendant has (2) deprived him or her of without adequate procedural protections.  *English v. D.C.*, 717 F.3d 968, 972 (D.C. Cir. 2013).  In their Opposition, Plaintiffs do not rebut Defendants' argument that non-citizens Gaskin and Hawkesworth cannot lay claim to a liberty or property interest protected by the U.S. Constitution.  *See* Mot. at 12-13.  And all Plaintiffs concede that they have not stated a *Bivens* action.  Opp. at 11.  Further, Plaintiffs do not controvert Defendants' argument that the SAC does not allege the deprivation of a procedural protection, such as a hearing or other opportunity to be heard.  *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard[.]").  The SAC, in fact, suggests the opposite by alleging the existence of procedural protections in the form of a U.S. grand jury proceeding and in the form of Barbadian legal proceedings in which they were in fact challenging extradition.  SAC ¶¶ 42, 56.  *See English*, 717 F.3d at 972 (affirming dismissal where procedural protections were available).  Plaintiffs' only rebuttal is to (i) repeat their assertion that certain unidentified statements in the extradition paperwork should have been corrected and (ii) add a new argument not found in the SAC that Defendants could have served Barbadian counsel with the motion to dismiss charges closer to December 24, 2013.  *See* Opp. at 20-21.  Such alleged and unalleged conduct do not state a constitutional due process violation, and Plaintiffs offer no authority to the contrary.  Therefore, Count VI should be dismissed.

### B.    Malicious Prosecution and False Imprisonment

Counts I and V should be dismissed.  First, Plaintiffs effectively concede that the malicious prosecution claim fails.  Plaintiffs do not deny that this claim requires pleading "termination of the proceeding in favor of the plaintiff" and that such a pleading has not and cannot be alleged.  *See*

Mot. at 26; *Sherrod v. McHugh*, 334 F. Supp. 3d 219, 255 (D.D.C. 2016); *Harris v. D.C.*, 696 F. Supp. 2d 123, 134 (D.D.C. 2010) ("To satisfy this essential element of malicious prosecution, Plaintiff bears the burden of alleging that his charges were dismissed with prejudice.") (citations omitted).

Second, the malicious prosecution and false imprisonment claims fail because probable cause for the arrest, prosecution, or confinement is a valid defense.  *See, e.g., Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 911-12 (2015).  Here, underlying both the prosecution and incarceration in Barbados pending extradition was a grand jury indictment.  SAC ¶ 42.  The Supreme Court has held that "an indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause[.]"  *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975).  And given that the SAC does not contain any factual allegations that undermine the grand jury's finding of probable cause, there is no plausible pleading of an unlawful restraint (for the false imprisonment claim) or an absence of probable cause (for the malicious prosecution claim).  *See Liles v. United States*, 638 F. Supp. 963, 968 (D.D.C.1986) (dismissing malicious prosecution claim where there was a grand jury indictment and "a court cannot now second-guess that determination); *see also Briscoe v. United States*, 268 F. Supp. 3d 1, 17 (D.D.C. 2017) (dismissing false imprisonment claim for failure to allege unlawful detention where there was a grand jury indictment and no allegations that the indictment was "unlawfully obtained or predicated on false testimony or evidence").

Rather than defend the adequacy of the SAC's allegations, Plaintiffs argue why this Court's previous decision denying Plaintiffs' motion to alter its dismissal of charges to a dismissal with prejudice was "wrong."  In so doing, Plaintiffs copy and paste word-for-word from their motion to alter dismissal.  *Compare* Opp. at 26-33 *with* Mem. Motion to Alter Dismissal, No. 04-cr-00285,

ECF No. 106 at 16-19, 28-32.  Plaintiffs' arguments are no more persuasive the second time around.  *See* Memorandum Opinion, No. 04-cr-00285, ECF No. 133, at 23-31.

For the foregoing reasons and those stated in the Motion, Plaintiffs' claims in Counts I and V for malicious prosecution and/or false imprisonment should be dismissed.

### C.    Deliberate Indifference

Plaintiffs fail to argue that their pleading is sufficient and cite no case law suggesting they have adequately pleaded a claim.  The Amended Complaint asserts a deliberate indifference claim against three specific individuals—May, Patten, and Blanco—yet Plaintiffs' Opposition does not even mention their names (again, except to note on page one that they are Defendants).  In fact, Plaintiffs make the legally backwards and, not surprisingly, unsupported argument that the "burden of proof should be on Defendants" to prove that they were not deliberately indifferent.  Opp. at 34. In sum, Plaintiffs' Opposition does not rebut the arguments of Defendants that Count VI fails to state a claim for relief.  *See* Mot. at 27-28.

### D.    Supervisory Liability for Deliberate Indifference

Plaintiffs do not rebut the specific arguments of Defendants as to this claim and thereby effectively concede that they have not stated a claim for supervisory liability for deliberate indifference under Count VII.  Opp. at 34.  Plaintiffs argue instead that perhaps they have stated a claim based on "the tort this Court would create with its common-law power to create torts."  *Id*. This to-be-determined tort "may or may not extend to a '*respondeat superior*' theory of liability." *Id*.  As such, the SAC plainly does not provide a statement "showing that the pleader is entitled to relief" as required by Rule 8 because, according to Plaintiffs, no one yet knows the scope of the claim.  *See Caldwell v. Argosy Univ.*, 797 F. Supp. 2d 25, 28 (D.D.C. 2011) (dismissing complaint because it does not "explain the nature of [the] claim, let alone its basis").  And as with the deliberate indifference claim, Plaintiff seeks to shift the burden to the Section Chief, AAG and

Attorney General Defendants by arguing "they may—or may not—be able to make a showing on their non-involvement with the tortious conduct here." Opp. at 34. Of course, that is not the standard. Plaintiffs are required to allege sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" and they have not done that. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### E.    Expungement

Plaintiffs argue that "all Plaintiffs have an Administrative Procedure Act, 5 U.S.C. §§ 551-706 ("APA"), claim for expungement based on intentionally false information submitted to the Department of State." Opp. at 6. Yet when one reviews Count II, the purported claim for expungement, any notion that this claim is based on the APA is entirely absent.[3] And Plaintiffs cannot amend their claim through the opposition brief. "It is a well-established principle of law in this Circuit that a plaintiff may not amend her complaint by making new allegations in her opposition brief." *Budik v. Ashley*, 36 F. Supp. 3d 132, 144 (D.D.C. 2014) (citing *Larson v. Northrop Corp.*, 21 F.3d 1164, 1173-74 (D.C. Cir. 1994)).

Plaintiffs' belated effort to rope in the APA as a basis for expungement may reflect Plaintiffs' recognition that expungement is an equitable *remedy* and not a standalone claim or cause of action. As the D.C. Circuit stated in its opinion dismissing Plaintiffs' appeal of this Court's denial of their motion to alter dismissal, the "remedy of expungement is available only if 'necessary to vindicate rights secured by the Constitution or by statute.'" *United States v. Scantlebury*, 921 F.3d 241, 250 (D.C. Cir. 2019) (citations omitted). Plaintiffs' Opposition does

---

[3]    A reference to the APA appears in only one place in the SAC. Paragraph 8 states vaguely: "Because the Government's actions and inaction in and related to the underlying criminal action and the extradition proceeding include final agency action for which Plaintiffs lack an adequate alternate remedy, the Administrative Procedure Act gives this Court jurisdiction and a cause of action to review that action and inactions." Obviously, this does not satisfy the requirements of Rule 8.

not articulate how the SAC's two sentence pleading of expungement, or any of the other allegations in the SAC, plead the extreme circumstances, such as flagrant constitutional violations, that could justify this equitable remedy.  *See* Mot. at 29-30.  Accordingly, Count II should be dismissed.

### F.      Right to Travel and Associate

In their Motion, Defendants explained how Count III, purporting to allege a claim for a violation of Plaintiff's "right to travel," should be dismissed as fatally vague, both as a matter of the legal basis for the claim and the factual pleading.  *See* Mot. at 30-31.  In the Opposition, Plaintiffs seemingly do not disagree, as Plaintiffs suggest they should be granted leave to amend. Opp. at 35.  But an amended pleading would not grant non-citizens Gaskin and Hawkesworth (who is deceased) rights to travel under the U.S. Constitution.  Instead, Plaintiffs argue that their family in the United States have a right to travel.  Opp. at 35.  Assuming that is true, those family members are not Plaintiffs, and the general rule is that litigants do not have standing to assert the rights of others.  *Barrows v. Jackson*, 346 U.S. 249, 255 (1953).  And even if Plaintiffs could assert the rights of family members, there are no factual allegations that any family member's right to travel has been affected.

Plaintiffs state that "Defendants do not dispute that Plaintiff Scantlebury has a right to visit his U.S.-based family."  *Id*.  But that is not the question.  Even assuming Scantlebury has that right, the question is whether Scantlebury has alleged a plausible claim for a violation of such a right. He has not.  Plaintiffs' Opposition does not dispute that the SAC fails to allege the constitutional basis for such a claim or offer any factual allegations that Scantlebury's right to travel as been violated.  *See Nattah v. Bush*, 770 F. Supp. 2d 193, 205 (D.D.C. 2011) (dismissing right to travel claim as "conclusory" and not "plausible").

As effectively conceded by the Opposition, Plaintiffs have not stated a plausible claim for a violation of a right to travel and consequently Count III should be dismissed.

## CONCLUSION

Defendants respectfully request that the SAC be dismissed in its entirety for the foregoing reasons.

Dated: March 31, 2021                    Respectfully submitted,

                                         CHANNING D. PHILLIPS, D.C. Bar #415793
                                         Acting United States Attorney

                                         BRIAN P. HUDAK
                                         Acting Chief, Civil Division

                                         By:    /s/ Sean Tepe
                                             SEAN M. TEPE, DC Bar #1001323
                                             Assistant United States Attorney
                                             555 Fourth Street, NW
                                             Washington, DC 20530
                                             (202) 252-2533
                                             sean.tepe@usdoj.gov